## In re HEALTH MANAGEMENT SYSTEMS, INC. SECURITIES LITIGATION.

### No. 97 CIV. 1865 RMB JCF.

United States District Court,
S.D. New York.

Feb. 4, 2000.

**228**

Neil L. Zola, Wolf Haldenstein Adler Freeman & Herz, New York, NY, Daniel J. Dolcetti, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz, New York, NY, Michael Jaffe, Wolfe Haldenstein Adler Freeman, & Herz LLP, New York, NY, Sharon Levine Mirsky, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Richard S. Schiffrin, Schiffrin & Craig, Ltd., Bala Cynwyd, PA, Nicholas E. Chimicles, Chimicles, Jacobsen & Tikellis, Haverford, PA, Mark D. Smilow, Weiss & Yourman, New York, NY, Andrew L. Barroway, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, David-Kessler, Schiffrin & Craig Ltd., Bala Cynwyd, PA, for Thomas Baker, Karen J. Connell, Glen Diamond, Moana Diamond, Scott Fisher, George Seiden, Anand Shetty, Ahmad Fillabi, Elizabeth Ronis, Evelyn Diamond, Tim Davis, Herman Fleet, Michael Goldman, Raymond Kirschbaum, Joseph Scognamilio, Eduard Korsinsky.

Neil L. Zola, Wolf Haldenstein Adler Freeman & Herz, New York, NY, Daniel J. Dolcetti, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Andrew L. Barroway, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, David-Kessler, Schiffrin & Craig Ltd., Bala Cynwyd, PA, for Dana Fisher.

Daniel J. Dolcetti, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz, New York, NY, Michael Jaffe, Wolfe Haldenstein Adler Freeman, & Herz LLP, New York, NY, Sharon Levine Mirsky, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Richard S. Schiffrin, Schiffrin & Craig, Ltd., Bala

Cynwyd, PA, Nicholas E. Chimicles, Chimicles, Jacobsen & Tikellis, Haverford, PA, Mark D. Smilow, Weiss & Yourman, New York, NY, Andrew L. Barroway, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, David-Kessler, Schiffrin & Craig Ltd., Bala Cynwyd, PA, for Thomas Caps.

Neil L. Zola, Wolf Haldenstein Adler Freeman & Herz, New York, NY, Daniel J. Dolcetti, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz, New York, NY, Michael Jaffe, Wolfe Haldenstein Adler Freeman, & Herz LLP, New York, NY, Sharon Levine Mirsky, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Nicholas E. Chimicles, Chimicles, Jacobsen & Tikellis, Haverford, PA, Mark D. Smilow, Weiss & Yourman, New York, NY, Andrew L. Barroway, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, David-Kessler, Schiffrin & Craig Ltd., Bala Cynwyd, PA, for Phil Lawitz, David Ornduff, Irving Putter, Miriam Putter, Donald T. Roberts, Virendra Sanghavi, August Vrancken, David Wright, Ayodele Abiona, Ali Badreddine.

Peter E. Calamari, Hertzog, Calamari & Gleason, New York, NY, Robert L. Sills, Reboul, Macmurray et al., New York, NY, Dennis J. Block, Weil, Gotshal & Manges LLP, New York, NY, David M. Broadsky, Schulte Roth & Zabel, LLP, New York, NY, Howard I. Rhine, Coleman, Rhine & Goodwin LLP, New York, NY, Jonathan J. Lerner, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Health Management Systems, Inc., Paul J. Kerz, Richard H. Stowe, John W. McIntyre, Donald J. Staffa.

Peter E. Calamari, Hertzog, Calamari & Gleason, New York, NY, Robert L. Sills, Reboul, Macmurray et al., New York, NY, Michael I. Bayda, Jacobs, Persinger & Parker, New York, NY, Dennis J. Block, Weil, Gotshal & Manges LLP, New York, NY, David M. Brodsky, Schulte Roth & Zabel, LLP, New York, NY, for Laurence B. Simon.

Robert L. Sills, Reboul, Macmurray et al., New York, NY, Dennis J. Block, Weil, Gotshal & Manges LLP, New York, NY, David M. Broadsky, Schulte Roth & Zabel, LLP, New York, NY, Howard I. Rhine, Coleman, Rhine & Goodwin LLP, New York, NY, Jonathan J. Lerner, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Russell L. Carson, Robert M. Holster.

## DECISION AND ORDER

BERMAN, District Judge.

This securities fraud class action was filed on March 17, 1997 (the "Action").[1] Plaintiffs alleged that Defendants, Health Management Systems, Inc. ("HMS")[2], and certain of its officers and directors including Defendant Philip Siegel ("Siegel"), the former Chief Financial Officer for HMS, disseminated false and misleading statements designed unlawfully to inflate the price of HMS stock.

On August 6, 1998, a stipulation dismissing Siegel from the Action "with prejudice" was executed by Plaintiffs and Siegel.[3] Siegel was and is individually represented by Dennis J. Block, Esq. and Michelle Roth, Esq. of Cadwalader, Wickersham & Taft.[4] Initially, HMS refused to indemnify Siegel for the attorneys' fees and expenses that he incurred in connection with his defense in the Action arguing, among other things, that the legal fees sought were neither reasonable nor necessarily incurred because Siegel did not need representation separate from the other Defendants.[5] HMS's refusal to provide indemnity has precipitated the instant proceeding.

In November 1998, Siegel filed a motion, pursuant to the New York Business Corporation Law ("BCL") and the by-laws of HMS, for an order requiring HMS to indemnify him for his attorneys' fees and expenses.[6] In June 1999, the Court referred Siegel's motion for indemnification to United States Magistrate Judge James C. Francis IV. Oral argument was held before Judge Francis on September 9, 1999. While the matter was pending before Judge Francis, HMS conceded that it was appropriate for Siegel to be independently represented; HMS continued to argue that the fees incurred by Siegel were not

---

1. This case was reassigned from United States District Judge Harold Baer, Jr. to this Court on or about December 8, 1998.

2. HMS is a New York corporation.

3. In fact, Siegel had not joined HMS until May 1996, three months after the allegedly fraudulent conduct had commenced. Furthermore, unlike the other individual Defendants who had sold HMS stock during the relevant period, Siegel had actually purchased HMS stock during that time.

4. At the time that they were initially retained by Siegel, Mr. Block was a partner and Ms. Roth was an associate at Weil, Gotshal & Manges LLP.

5. Following commencement of the Action, HMS retained the law firms Skadden, Arps, Slate, Meagher & Flom LLP and Coleman & Rhine LLP to represent the corporation and the individual Defendants.

6. BCL § 722(a) provides, in relevant part, that a corporation may indemnify an officer or director for "reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of" an action or proceeding concerning the individual's corporate responsibilities.

Article VIII, Section 1 of the HMS by-laws provide that "the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any action, suit or proceeding ... by reason of the fact that he is or was a director, officer, employee or agent of the Corporation ... against expenses (including attorneys' fees) ... actually and reasonably incurred by him in connection with such action[.]"

Article VIII, Section 3 of the HMS by-laws provides that "[t]o the extent ... that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding described above, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith, without the necessity of authorization in the specific case."

reasonable. On October 25, 1999, Judge Francis issued a Report and Recommendation ("Report") recommending that Siegel be awarded indemnification against HMS for "$60,959.50 in attorneys' fees and $6,677.23 in expenses, for a total of $67,636.73." (Report at 237). Judge Francis disallowed $17,147.64 on the grounds that that amount of fees and costs was incurred in attempting to secure indemnification (so-called "fees on fees").

In his Report, Judge Francis clearly advised and notified the parties of the procedures for objecting to the Report, stating that "[p]ursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation." (Report at 237). On or about November 8, 1999, both HMS and Siegel filed timely objections to the Report. In summary, Siegel argues that he should be awarded "all of the fees he has incurred in seeking to enforce his indemnification obligation against the Company [HMS]." (Siegel's Objections dated November 8, 1999 at 25). HMS asserts that the Report should be "rejected to the extent it recommends reimbursement of Siegel's legal fees, pending the conduct by this Court of the mandatory Reform Act review and a determination of the propriety, for Rule 11 purposes, of plaintiffs' having named Siegel as a defendant." (HMS's Objections dated November 8, 1999 at 4).

This Court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985). The Court conducts a de novo review of those portions of the Report to which objections have been made. *See Pizarro,* 776 F.Supp. at 817. "Because 28 U.S.C. § 636(b) requires a 'de novo deter-

mination' rather than a de novo hearing, the district court is free to place 'whatever reliance ... in the exercise of sound judicial discretion, [it chooses] to place on a magistrate's proposed findings and recommendations.'" *Pizarro,* 776 F.Supp. at 817 (quoting *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989)).

The Court has undertaken a de novo review of the record and the law and, following such review, is in agreement with all of Judge Francis' conclusions in every material respect. The Report is adopted in its entirety. The Court will, however, briefly discuss three issues raised in the parties' objections.

■ First, Siegel argues that it is unfair to conclude, as Judge Francis did, that his "right to be indemnified does not include the right to be reimbursed for the costs and fees he incurred" in order to secure such indemnification (i.e., fees on fees). (Siegel's Objections dated November 8, 1999 at 2). This is by no means the first time that the issue of "fees on fees" has arisen. The general rule for resolving this (indemnity) issue was stated by the New York Court of Appeals as follows: "Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *Hooper Associates, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989) (citations omitted)(emphasis added). Although acknowledging that some courts have awarded fees on fees [7], Judge Francis could find no "unmistakably clear" language here supporting an award of fees on

---

7. *See Sierra Rutile Limited v. Katz,* 1997 WL 431119 (S.D.N.Y. July 31, 1997); *Fleischer v.*     *FDIC,* 70 F.Supp.2d 1238 (D.Kan.1999).

fees to Siegel.[8] *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20–21 (2d Cir.1996). This Court agrees. *See Mayer v. Executive Telecard, Ltd.,* 705 A.2d 220 (Del.Ch.1997).

The Court recognizes, as did Judge Francis, that there may be an element of illogic in denying fees on fees. After all, the purpose of indemnity is to make someone whole. In light of existing precedents, however, the Court believes that the appropriate resolution of this problem is to amend the applicable instrument, be it a contract or a corporate by-law, explicitly to authorize fees on fees[9], rather than to conclude that language which is ambiguous is, actually, "unmistakably clear." *See Mayer,* 705 A.2d at 223 ("the Delaware General Assembly apparently has concluded that allowing mandatory indemnification for fees incurred in the underlying action is an adequate incentive, without also requiring indemnification of the fees incurred by the claimant in the indemnification action itself. Reasonable persons may disagree with that judgment, i.e., whether 'fees for fees' is also needed as a further incentive for capable persons to serve as directors or officers of Delaware corporations. In the end, however, that judgment is legislative, not judicial"); *Chamison v. HealthTrust, Inc.,* 735 A.2d 912, 926 (Del.Ch.1999)(citing *Mayer,* the Court stated that "[o]rdinarily, under Delaware law, a successful suit for indemnification does not entitle the successful director or officer to recover 'fees for fees'"). *See also Canpartners Investments IV, LLC v.*

*Alliance Gaming Corp.,* 981 F.Supp. 820, 826–27 (S.D.N.Y.1997).

Second, Siegel asserts that HMS should be obligated to reimburse him "for all his costs he incurred in prosecuting the instant application because the incurrence of such fees was entirely the result of the Company's [HMS] unreasonableness, bad faith conduct, and dilatory tactics in connection with Mr. Siegel's efforts to recover the costs of his legal representation in the Action to which he is absolutely entitled." (Siegel's Objections dated November 8, 1999 at 21). The Court of Appeals for the Second Circuit has held that "[u]nder the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons ...'" *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (citation omitted). The Second Circuit has also cautioned that "[t]his circuit has interpreted the standard restrictively." *Id.*

**The determination of whether HMS's conduct vis-a-vis Siegel's indemnity rose to the level of bad faith is regrettably a very close call.** HMS's initial determination to resist indemnification arguing that Siegel had no need for separate representation was untenable. It should have been clear to HMS from the start that Siegel's unique circumstances (i.e., the fact that he

8. The Court notes that the New York State Legislature has not included language in the BCL that explicitly provides for fees on fees as other states have done in their statutes. *See, e.g.,* Ga.Code Ann. § 14–2–854(b)("If the court determines that the director is entitled to indemnification or advance for expenses ..., it may also order the corporation to pay the director's reasonable expenses to obtain court-ordered indemnification or advance for expenses").

9. *See* Josiah O. Hatch, *Policing the Limits of Indemnification: Is Delaware Changing Its Public Policy on Director and Officer Protec-*

*tion?,* Insights, January, 1998, at 12 ("Directors and officers should recognize the importance of explicit documentation of their rights to indemnification and expense advancements. If the intention of the corporation is to reassure directors and officers that they will be supported in efforts to vindicate themselves, then the corporation's charter documents or indemnification agreement should provide explicitly for the payment of counsel fees in the event of a successful attempt to enforce rights to indemnification. ...").

joined HMS three months after the alleged fraudulent conduct had commenced and the fact that, unlike the other individual Defendants, he had purchased rather than sold HMS stock at the allegedly inflated price) warranted separate representation. On the other hand, HMS backed away from this initial position. As Judge Francis explained in the Report: "[i]n its initial response to [Siegel's] application, HMS contended that the fees sought were neither reasonable nor necessarily incurred because Mr. Siegel had no need for separate · representation. Thereafter, the company modified its position and now concedes that it was appropriate for Mr. Siegel to be independently represented. However, HMS continues to argue that the fees incurred were not reasonable, and that indemnification should be limited to the 'value added' by Mr. Block to the work done by Skadden on behalf of all defendants." (Report at 5–6). But for this change in position, HMS's conduct may well have justified an award of additional fees to Siegel. *See Dunlap v. Sunbeam Corp.,* 1999 WL 1261339 at * 6 (Del.Ch. July 9, 1999)("[w]hile this Court has on occasion awarded 'fees for fees,' I do not find Sunbeam's actions in disputing this matter to be so egregious or in such bad faith as to require that special form of discipline").[10]

▆ Third, HMS argues that Siegel breached his duty to HMS and, therefore, forfeited his right to indemnification, by including a waiver of attorneys' fees in the stipulation pursuant to which the claims against him were dismissed. HMS asserts that "the Magistrate Judge left HMS in the position of having to reimburse Siegel for fees which the Court may well find should never have had to be incurred (by virtue of Siegel's wrongful inclusion in the lawsuit), but without the means (soley by

virtue of Siegel's gratuitous act) of being made whole." (HMS's Objections dated November 8, 1999 at 3–4). HMS's argument is not persuasive.[11]

HMS's argument, in this regard, stands logic on its head by suggesting that Siegel should have remained as a defendant in the Action—thereby, incidentally, incurring additional legal fees and expenses—rather than achieve dismissal with prejudice. Siegel persuasively points out that "there is no authority—and the Company [HMS] cites none—that stands for the proposition that by waiving his right to seek sanctions against plaintiffs' counsel Mr. Siegel has fortified [sic][12] his right to indemnification from the Company." (Siegel's Opposition to HMS's Objections dated December 3, 1999 at 5). And, in any event, as HMS also concedes "[e]ven though Siegel was dismissed out (and subsequently stipulated out of the case he was no longer in), that dismissal does not preclude the court's review of the sanctions issue as respects Siegel ..." (HMS's Objections dated November 8, 1999 at 3).

### Conclusion and Order

Accordingly, the Court incorporates the Report by reference and, for the reasons set forth herein, directs that Siegel forthwith be awarded indemnification against HMS for $60,959.50 in attorneys' fees and $6,677.23 in expenses, for a total of $67,636.73.

### REPORT AND RECOMMENDATION

FRANCIS, United States Magistrate Judge.

This litigation consists of consolidated securities fraud class actions in which the plaintiffs charge Health Management Systems, Inc. ("HMS") and certain of its

---

10. It appears that this opinion, 1999 WL 1261339 (Del.Ch. July 9, 1999), revised and superseded 1999 WL 438834 (Del.Ch. June 23, 1999), which was cited in Siegel's Objections dated November 8, 1999.

11. In his Report, Judge Francis accurately and appropriately described this argument as a "red herring." (Report at 10 n. 3).

12. The Court believes that Siegel meant to use the word "forfeited" rather than "fortified."

officers and directors with violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Phillip Siegel was the chief financial officer of HMS and a named defendant in this litigation. Now, pursuant to section 724(a)(1) of the New York Business Corporation Law ("B.C.L.") and the by-laws of the company, he seeks indemnification from HMS for the attorneys' fees and expenses he incurred in connection with his defense of the action. For the reasons set forth below, I recommend that Mr. Siegel's application be granted in part.

*Background*

The plaintiffs in the class actions allege that the defendants disseminated false and misleading statements in order to inflate the price of HMS stock. (Consolidated Amended Complaint ("Consolidated Complaint") ¶¶ 53, 54, 55). The individual defendants then profited by selling a significant portion of their shares at the inflated prices. (Consolidated Complaint ¶¶ 7, 38(b), 39(b), 40(b), 42(b), 43(b), 44(b), 45(b), 53). The plaintiffs, by contrast, relied on the allegedly false information and purchased stock at the higher prices, only to lose money when the truth was disclosed and the stock fell. (Consolidated Complaint ¶¶ 6, 53).

Following the commencement of the class actions, HMS engaged the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to represent the corporation and all individual defendants. (Affidavit of Howard I. Rhine dated Oct. 23, 1998 ("Rhine Aff.") ¶ 4). The firm of Coleman & Rhine LLP was to act as co-counsel. (Rhine Aff. ¶ 4). Shortly thereafter, Mr. Siegel wrote to the Skadden partner in charge, advising him that because of a potential conflict he wished to be represented by separate counsel, and that he had therefore retained Dennis J. Block of Weil, Gotshal & Manges LLP ("Weil, Gotshal"). (Affidavit of Dennis J. Block dated Sept. 24, 1998 ("Block Aff."), Exh. A). Mr. Block followed up this letter with communications to both HMS and its insurer seeking advancement of Mr. Siegel's fees and expenses. (Block Aff., Exhs. B, E). Mr. Block explained that Mr. Siegel's defense diverged from that of the other defendants in two key respects. First, Mr. Siegel had not joined HMS until May 1996, three months after the fraudulent conduct had allegedly commenced. Second, unlike other individual defendants who sold shares during the relevant period, he had purchased HMS stock during that time. (Block Aff., Exh. B).

HMS initially deferred decision on Mr. Siegel's request, reasoning that the extent that separate representation was justified would be more apparent after Skadden had prepared a motion to dismiss and circulated it among all the defendants. (Block Aff., Exh. G). Nevertheless, after further correspondence, HMS authorized an advance of up to $5,000 in fees and expenses for Mr. Siegel. (Block Aff., Exh. I).

Shortly thereafter, Coleman & Rhine wrote to plaintiffs' counsel and tried to convince them to drop Mr. Siegel as a defendant. (Def.Exhs.6, 7).[1] Plaintiffs' attorneys did not acquiesce, and on August 1, 1997, Skadden circulated to all defendants a preliminary draft of a memorandum in support of a motion to dismiss. (Def.Exh. 8). That draft did not note that Mr. Siegel only joined HMS after the alleged fraud had begun. It did argue that his purchase of shares during the relevant period undermined the plaintiffs' allegations that the defendants were motivated to commit securities fraud. (Def.Exh. 8 at 24–27).

Skadden circulated a second draft on August 11, 1997. (Def.Exh. 9). Mr. Siegel's purchase of stock, along with that of

1. This refers to exhibits contained in a binder that was submitted at a hearing on the instant application held on September 9, 1999.

another individual defendant, was again noted. However, there was still no mention of the significance of the date when he joined the company. (Def.Exh. 9 at 19–21). A final memorandum in substantially the same form as the second draft was filed with the court two days later. (Def.Exh. 10 at 19–21).

At the same time, Weil, Gotshal submitted a four-page brief solely on behalf of Mr. Siegel. (Def.Exh. 11). This memorandum emphasized the two characteristics that distinguished him from the other defendants: the fact that he purchased shares during the relevant period and the fact that he had become employed by the firm after the alleged fraud had begun. (Def.Exh. 11). Weil, Gotshal reiterated these points in the reply brief that it filed for Mr. Siegel on October 15, 1997 (Def.Exh. 14).

In June 1998, the Court granted the defendants' motion and dismissed the First Amended Consolidated Complaint with leave to replead. The following month, the plaintiffs filed a Second Amended Consolidated Complaint naming the same defendants. In August 1998, however, they stipulated to dismiss with prejudice the claims against Mr. Siegel. (Block Aff., Exh. K).

Mr. Block, who by this time had joined the firm of Cadwalader, Wickersham & Taft, then wrote to HMS seeking indemnification for Mr. Siegel's legal fees and costs. (Block Aff., Exh. L). When the company did not respond positively, Mr. Block filed the instant application, seeking a total of $84,825.15 in fees and expenses.

In its initial response to the application, HMS contended that the fees sought were neither reasonable nor necessarily incurred because Mr. Siegel had no need for separate representation. Thereafter, the company modified its position and now concedes that it was appropriate for Mr. Siegel to be independently represented. However, HMS continues to argue that the

fees incurred were not reasonable, and that indemnification should be limited to the "value added" by Mr. Block to the work done by Skadden on behalf of all defendants. (Tr. 6–7, 14–16, 23).[2] HMS also maintains that Mr. Siegel is not entitled to recover the fees and expenses that he has incurred in his efforts to obtain indemnification, including his costs for this application.

*Discussion*

A. *Reasonable Fees*

Pursuant to B.C.L. § 722(a), a corporation may indemnify an officer or director for "reasonable expenses, including attorneys' fees actually and necessarily incurred" in connection with litigation concerning the individual's corporate responsibilities. The by-laws of HMS track the statutory provision. Article VIII, Section 1 states:

[T]he Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any action, suit, or proceeding ... by reason of the fact that he is or was a director, officer, employee or agent of the Corporation ... against expenses (including attorneys' fees) ... actually and reasonably incurred by him in connection with such action[.]

(Block Aff., Exh. F at 21–22). Article VIII, Section 3 further provides:

To the extent ... that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding described above, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith, without the necessity of authorization in the specific case.

(Block Aff., Exh. F at 24). Finally, Article VIII, Section 6 provides that expenses may be advanced to a director or officer

---

**2.** "Tr." refers to the transcript of the hearing held on September 9, 1999.

defending a claim. (Block Aff., Exh. F at 26).

▉ There is no doubt that Mr. Siegel's position in the underlying litigation here was unique and warranted separate representation. Even if there was no actual conflict between Mr. Siegel and the other defendants, there was a tension that affected how their respective positions would be characterized in the litigation. Although the final Skadden brief noted that Mr. Siegel had bought shares during the relevant period, it linked this fact to the argument that another defendant, the chief executive officer, had only sold a small proportion of his shares. (Def.Exh. 9 at 19–21; Def.Exh. 10 at 19–21). Thus, Mr. Siegel was depicted less as a unique defendant than as an extreme point on a continuum where all the defendants lacked the requisite scienter. Moreover, Skadden never made the point that Mr. Siegel could not have been party to any alleged fraud at its inception since he had not yet joined the company.

In these circumstances, it was incumbent upon Mr. Block to provide Mr. Siegel with full representation. This necessarily included tasks that any lawyer would provide for his or her client, such as investigating the facts and conducting basic research. HMS's argument that Mr. Block should be reimbursed only for the "value added" to the work performed by Skadden is thus without merit.

HMS also mounts three general attacks on the reasonableness of the time expended by Weil, Gotshal. First, it argues that Mr. Block delegated this project to a second year associate, Michelle Roth, and then failed to supervise her, allowing Ms. Roth to generate exorbitant fees. Of course, if Mr. Block had supervised Ms. Roth closely, HMS might have contended that his time was duplicative and should be disallowed. In any event, Ms. Roth's time

records indicate that she provided representation in an organized and professional manner for which Weil, Gotshal is entitled to compensation.

Second, HMS argues that the time spent was excessive because Ms. Roth failed to coordinate her activities with Skadden. Again, the time records fail to bear out this contention. For example, the research she conducted with respect to Mr. Siegel's defenses postdated her receipt of the first Skadden draft; she did not simply embark on full-bore litigation oblivious to what her co-counsel were doing. (Block Aff., Exh. N, entries for 8/3/97 and following).

Third, HMS points out specific instances where the time spent by Mr. Siegel's counsel on particular tasks seems excessive. For example, on October 27, 1997, Ms. Roth spent 3.9 hours drafting attorney substitution papers. (Tr. 19–20; Affidavit of Dennis J. Block dated Nov. 13, 1998, Exh. B ("Fee Records")). Similarly, on November 6, 1997, she spent 2.0 hours preparing a notice of appearance and arranging to have it filed. (Tr. 20; Fee Records). While HMS's argument in this regard is more persuasive, the time involved is *de minimis*. On more time-consuming tasks, such as preparation for oral argument, the time spent by Weil, Gotshal was entirely reasonable. Moreover, any excessive billing is more than offset by the time spent by Mr. Block for which he did not charge. (Tr. 31–32, 55).

Mr. Siegel, then, is entitled to full compensation for the time spent by his attorneys in defending him. Separate counsel was necessary. The contemporaneous time records indicate that the fees were reasonably incurred. The lawyering was of the highest caliber. And, of course, the result obtained was fully favorable to Mr. Siegel.[3]

---

3. HMS argues that Mr. Siegel breached his duty to it—and therefore forfeited his right to indemnification—by including a waiver of attorneys' fees in the stipulation by which the

claims against him were dismissed. This is a red herring. HMS has certainly not demonstrated that Mr. Siegel would be entitled to fees under Rule 11, and indemnification can-

## B. *Fees on Fees*

Mr. Siegel also seeks the fees and costs he has incurred in attempting to secure indemnification. He cites two cases that are directly on point. In *Sierra Rutile Ltd. v. Katz,* No. 90 Civ. 4913, 1997 WL 431119, at *2 (S.D.N.Y. July 31, 1997), the Honorable John F. Keenan, U.S.D.J., awarded the moving parties their fees and expenses in seeking indemnification under the B.C.L. Similarly, in *Professional Insurance Co. of New York v. Barry,* 60 Misc.2d 424, 428, 303 N.Y.S.2d 556, 560–61 (1969), the court granted the movant the costs incurred in enforcing his right to indemnification. There the court reasoned that but for the underlying action against him as a corporate officer, the movant would not have incurred such expenses.

■■■■ The difficulty with these cases is that they cannot be reconciled with the general rule in New York that attorneys' fees may not be awarded unless there is specific statutory or contractual authorization. *See Hooper Associates, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 366, 548 N.E.2d 903 (1989); *A.G. Ship Maintenance Corp. v. Lezak,* 69 N.Y.2d 1, 5, 511 N.Y.S.2d 216, 218, 503 N.E.2d 681 (1986); *see also F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1266–67 (2d Cir.1987); *Bourne Co. v. MPL Communications, Inc.,* 751 F.Supp. 55, 57 (S.D.N.Y.1990). This principle applies specifically to indemnification. That is, where a party is provided with indemnification by statute or agreement, it is nevertheless not entitled to its fees for enforcing its rights against the indemnitor absent specific language to that effect. *See Canpartners Investments IV, LLC v. Alliance Gaming Corp.,* 981 F.Supp. 820, 826–27 (S.D.N.Y.1997); *Bourne Co.,* 751 F.Supp. at 57; *Hooper Associates,* 74

N.Y.2d at 491, 549 N.Y.S.2d at 366, 548 N.E.2d 903.

There is no such provision in this case. Mr. Siegel has not pointed to any section in the B.C.L. that provides for fees in seeking indemnification. Nor is there such language in the HMS by-laws. Accordingly, Mr. Siegel is relegated to arguing that it is unfair for someone promised complete indemnification to have to incur substantial costs to secure that right. So it is. But that is an argument appropriately addressed to the New York legislature rather than to this Court. Imposing a cost on someone seeking to enforce his rights—whether those rights arise from contract, statute, or common law—may seem inequitable. But shifting fees in such situations would create an exception that would swallow the "American rule" that each party generally bears its own costs in litigation.

To be sure, Judge Keenan awarded fees on fees under the B.C.L. in *Sierra Rutile,* but that opinion contains no analysis of the issue. 1997 WL 431119, at *2. In *Barry,* the court reasoned that fees on fees were "necessary" in connection with the defense of the underlying litigation. 60 Misc.2d at 428, 303 N.Y.S.2d at 560–61. Yet this strained interpretation of the language of the B.C.L. has not been adopted by any other court and is inconsistent with the New York rule that an intent to shift fees must be clearly stated. Fees on fees "are not a part of defending the indemnified claim, but instead fall within the ordinary rule that each party bears its own expenses." *Thyssen, Inc. v. S/S Eurounity,* 21 F.3d 533, 541 (2d Cir.1994) (citation omitted). Accordingly, indemnification here should be limited to costs incurred in defending Mr. Siegel in the core litigation.[4]

not be denied simply on the basis of HMS's representation that such a motion could have been made.

**4.** Mr. Siegel also relies on Delaware cases that award fees on fees where the indemnitor's refusal to advance costs is "so egregious

or in such bad faith as to require that special form of discipline." *Dunlap v. Sunbeam Corp.,* No. Civ.A 17048, 1999 WL 438834, at *6 (Del.Ch. June 23, 1999); *see also Chamison v. HealthTrust, Inc.—The Hospital Co.,* 735 A.2d 912, 926–27 (Del.Ch.1999). There

### C. *Calculation of Fees*

Based on the analysis above, it is necessary to winnow out those fees and costs attributable to Mr. Siegel's efforts to obtain indemnification. This is not an exact process. In some cases it is evident from the time records that an entire entry is related to seeking fees. On the other hand, some entries are ambiguous or encompass some tasks that relate to the core case and others that relate to indemnification. Accordingly, based on an approximate allocation of time and expenses between these issues, Mr. Siegel should be awarded attorneys' fees and costs as follows:

| | *Fees* | | *Costs* | | *Total* | |
|---|---|---|---|---|---|---|
| *Allowed* | *Disallowed* [5] | *Allowed* | *Disallowed* [6] | *Allowed* | *Disallowed* |
| $60,959.50 | $15,943.00 | $6,677.23 | $1,204.64 | $67,636.73 | $17,147.64 |

*Conclusion*

For the reasons set forth above, I recommend that Mr. Siegel be awarded indemnification against HMS for $60,959.50 in attorneys' fees and $6,677.23 in expenses, for a total of $67,636.73. Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, Room 426, 40 Foley Square, New York, New York 10007 and to the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Oct. 25, 1999.

---

is no basis, however, to believe that the New York B.C.L. provides for such sanctions.

5. The time entries for which fees are disallowed are: two-thirds of the time spent by Ms. Roth on 5/21/97; one-half of her time on 5/27/97; all of Ms. Roth's time on 5/30/97 and 6/2/97; all but two hours of her time on 6/11/97; all of her time on 6/12/97; all time spent by all attorneys from 12/19/97 through 1/30/98; all of Ms. Roth's time on 6/1/98, 6/2/98, 7/16/98, 7/27/98, 7/29/98, 7/30/98, 7/31/98, 8/17/98, 8/18/98, 8/19/98, and 8/21/98; and one-half of Ms. Roth's time on 8/6/98. All other entries are allowed. (Fee Records).

6. The costs disallowed are: all costs of 6/19/97, 6/25/97, 12/30/97 through 2/28/98, and 7/24/98 through 8/26/98. (Fee Records).