**Thomas BAKER, on behalf of himself and all others similarly situated, Karen J. Connell, Glenn Diamond, Moana Diamond, Scott Fisher, Dana Fisher, George Seiden, Anand Shetty, Ahmad Fillabi, Elizabeth Ronis, Thomas Caps, Evelyn Diamond, Tim Davis, Herman Fleet, Michael Goldman, Raymond Kirschbaum, Phil Lawitz, Irving Putter, Miriam Putter, Donald T. Roberts, Virendra Shanghavi, August Vrancken, Ayodele Abiona, Ali Badreddine, Joseph Scognamilio and Eduard Korsinsky, Plaintiffs,**

v.

**HEALTH MANAGEMENT SYSTEMS, INC., Paul Kerz, Laurence B. Simon, Richard H. Stowe, John W. McIntyre, Donald J. Staffa, Russell L. Carson and Robert M. Holster, Defendants–Appellees,**

v.

**Phillip Siegel, Defendant–Appellant.**

**Docket No. 00–7736.**

United States Court of Appeals, Second Circuit.

Argued April 27, 2001.

Question Certified to the New York Court of Appeals Aug. 21, 2001.

Dennis J. Block, Cadwalader, Wickersham & Taft, New York, NY, (Michelle L. Roth, Jasmine Khalili on the brief), for Appellant.

Howard I. Rhine, Coleman Rhine & Goodwin, LLP, New York, NY, for Appellee.

Before: JACOBS, PARKER, KATZMANN, Circuit Judges.

PARKER, Circuit Judge:

Defendant-appellant Phillip Siegel appeals from an order entered on May 12, 2000 in the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*), granting in part his application for indemnification from defendant-appellee Health Management Systems, Inc. ("HMS") (and other individual defendants), but denying his application for reimbursement for attorneys' fees and costs incurred in bringing the application for indemnification (also known as "fees on fees"). Siegel made his application pursuant to, inter alia, New York Business Corporation Law § 724 (McKinney 1986 & Supp.2000), which allows the court to order indemnification to a corporate officer who is forced to defend against litigation by virtue of his position as a corporate officer. In total, Siegel claimed $84,825.15 in fees and costs.

The district court awarded Siegel indemnification against HMS for $60,959.50 in attorneys' fees and $6,677.23 in expenses and disallowed $17,147.64 on the grounds that these fees and costs were incurred in attempting to secure indemnification. *See*

*In re Health Mgmt. Sys., Inc. Secs. Litig.* (*"HMS Litig."*), 82 F.Supp.2d 227, 232 (S.D.N.Y.2000). On appeal, Siegel argues that (1) the district court should have ordered reimbursement for all fees and expenses incurred in connection with his application for indemnification, because they were incurred in connection with his successful defense of the action and (2) the district court should have ordered reimbursement for all fees and expenses incurred in seeking indemnification because these fees were the result of HMS's bad faith conduct. We affirm all of the district court's factual findings, including its finding of no bad faith on the part of HMS. Therefore, we reject Siegel's second contention and affirm the district court's decision to deny Siegel's reimbursement based on HMS's bad faith. Despite finding no bad faith on the part of HMS, Siegel's claim pursuant to New York Business Corporation Law §§ 722–24 for "fees on fees" remains. Because of an absence of New York Court of Appeals case law interpreting New York Business Corporation Law §§ 722–724 (McKinney 1986 & Supp.2000), we certify the following question to the New York Court of Appeals: Where a corporate officer is "successful" in the defense of an underlying action, within the meaning of New York Business Corporation Law § 723(a), where the corporation unsuccessfully contests the duty to indemnify and contests with partial success the amount of indemnification, and where there is no bad faith on the part of the corporation, does the phrase "attorneys' fees actually and necessarily incurred as a result of such action or proceeding," as used in New York Business Corporation Law § 722(a), provide for recovery of reasonable fees incurred by a corporate offi-

cer in making an application for fees before a court (as authorized by New York Business Corporation Law § 724(a))?

## I. BACKGROUND

### A. The Underlying Action

In early 1997, plaintiffs filed several securities fraud class actions against the defendants, Health Management Systems, Inc. and certain officers and directors of HMS, including appellant Phillip Siegel. The complaints alleged that defendants disseminated false and misleading statements designed unlawfully to inflate the price of HMS stock. Eventually, these actions were consolidated.

HMS hired Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as its counsel for defending this action, with the firm of Coleman & Rhine ("Coleman") to act as co-counsel. Skadden and Coleman represented the individual defendants as well, except for Siegel, who hired Dennis Block, then of the firm Weil, Gotshal & Manges LLP.[1] Siegel felt that there were certain unique facts that set his situation apart from the other individual defendants. First, Siegel joined HMS in May 1996, which was approximately three months after the beginning date of the class period. *See In re Health Mgmt. Sys., Inc. Secs. Litig.*, No. 97 CIV. 1865(HB), 1998 WL 283286, at *1 (S.D.N.Y. June 1, 1998). Second, Siegel actually *purchased* shares of HMS stock during the class period whereas others did not.

Skadden prepared and filed a motion to dismiss the complaint on behalf of HMS and the individual defendants, while Block filed a memorandum of law on Siegel's behalf highlighting the unique circumstances pertaining to him.[2] On June 1,

---

**1.** Block is now with the firm Cadwalader, Wickersham & Taft ("Cadwalader"), and

Block and his new firm now represent Siegel on this appeal.

**2.** HMS's motion to dismiss did mention that

1998, Judge Baer[3] granted the defendants' motion to dismiss, with leave to replead. *See In re HMS,* 1998 WL 283286, at \*1. On August 6, 1998, plaintiffs and Siegel entered into a stipulation of dismissal with prejudice as to all claims against Siegel. Judge Baer signed the order granting dismissal on August 10, 1998. The action continued against the other defendants and was eventually settled for in excess of four million dollars.

## B. Siegel's Pursuit of Indemnification from HMS for his Legal Fees

On June 2, 1998, Block, on behalf of Siegel, wrote to Coleman & Rhine to seek indemnification under New York Business Corporation Law section 723 for legal services provided to Phillip Siegel in defense of the dismissed action. Receiving no response, Block reiterated this request in a letter dated August 6, 1998, the same day as the stipulated dismissal was ordered with prejudice. On August 13, 1998, Coleman & Rhine responded to this request, and declined to forward any fees, stating that "considerations of necessity and reasonableness have bearing on the issue of indemnification for legal fees."

In November 1998, Siegel moved for indemnification for legal fees incurred defending the action, pursuant to New York Business Corporation Law ("NYBCL") § 724(a) and HMS By–Law VIII.5. *See HMS Litig.,* 82 F.Supp.2d at 229. Siegel claimed $84,825.15 in fees and costs.

In October 1998, HMS, through Coleman & Rhine, opposed the motion for indemnification, claiming that these claimed fees were unreasonably excessive and unnecessary because HMS had retained Skadden as counsel for all defendants.

HMS contended that the work of Siegel's counsel was duplicative of Skadden's work, and that $5,000 should be enough to cover any reasonable fees. HMS also argued that the stipulation of dismissal entered into by Siegel and the plaintiffs, which included a provision that Siegel would not seek sanctions against the plaintiffs, provided a defense to Siegel's claim for indemnification.

The district court scheduled argument on the motion for June 11, 1999, but in response to a letter written by Coleman on June 10, 1999, the district court referred Siegel's motion to United States Magistrate Judge James C. Francis. Oral argument was held before Judge Francis on September 9, 1999. In the meantime, Cadwalader had sought discovery from Skadden, specifically seeking production of witnesses and documents. Coleman objected to this discovery and indicated to Magistrate Judge Francis that HMS sought no evidentiary hearing before the magistrate and that oral argument would be sufficient. According to Cadwalader, the Magistrate, in a teleconference, found that because HMS continued to contest the necessity and reasonableness of Siegel's separate counsel, HMS was required to produce certain documents. However, the discovery disputes between Cadwalader and Coleman continued. Additionally, Coleman, in correspondence with Cadwalader on August 10, 1999, stated that "HMS will not claim that it was not 'necessary' for individual defendants to retain counsel."

During oral argument before Magistrate Judge Francis, HMS conceded that Siegel was "probably" entitled to more than the $5,000 cap set by HMS for indemnification

---

Siegel had sold no shares of stock and had actually purchased shares during the class period.

**3.** This case was reassigned from Judge Baer to Judge Berman around December 8, 1998.

to its corporate officers for individual representation. HMS continued to argue that Siegel's stipulation of dismissal waived his right to indemnification because the stipulation forfeited Siegel's right to seek sanctions against the plaintiffs for including him as a defendant.

On October 25, 1999, Magistrate Judge Francis issued a report and recommendation, granting in part Siegel's request for indemnification. Magistrate Judge Francis concluded that "[t]here is no doubt that Mr. Siegel's position in the underlying litigation here was unique and warranted separate representation." *HMS Litig.*, 82 F.Supp.2d at 235. Magistrate Judge Francis also concluded that the representation provided by Block and his associate Michelle Roth was reasonable, and stated that the "lawyering was of the highest caliber." *Id.* The Magistrate rejected Siegel's argument that he should recover the fees and costs he had incurred in attempting to secure indemnification. *Id.* at 236. Magistrate Judge Francis concluded that to award such fees could not be "reconciled with the general rule in New York that attorneys' fees may not be awarded unless there is specific statutory or contractual authorization." *Id.* (citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)). Finding no such authorization, Magistrate Judge Francis concluded that Siegel's "fees on fees" argument should be rejected. *Id.* Magistrate Judge Francis thus recommended that Siegel be awarded indemnification against HMS for $60,959.50 in attorneys' fees and $6,677.23 in expenses, and disallowed $17,147.64 on the grounds that these fees and costs were incurred in attempting to secure indemnification. *Id.* at 237.

The district court adopted and incorporated the Report and Recommendation in its entirety. *Id.* at 232. Siegel had filed timely objections to the Report, arguing that he should be awarded all the fees incurred in seeking indemnification. *Id.* at 230. The district court rejected Siegel's objections, based on the same reasoning as Magistrate Judge Francis, but noted "an element of illogic in denying fees on fees." *Id.* at 231. The district court stated that this "illogic" should be remedied legislatively or through contract, not by a federal court construing New York State law. *Id.* The district court also rejected Siegel's argument that he was entitled to reimbursement for these fees and costs because of HMS's bad faith in denying his application for indemnification. *Id.* at 232. The district court noted, however, that the "determination of whether HMS's conduct vis-a-vis Siegel's indemnity rose to the level of bad faith is regrettably a very close call." *Id.* at 231. Because HMS ultimately conceded that Siegel warranted independent counsel from the company, the district court concluded that, in the end, HMS did not act in bad faith, warranting an award of fees on fees. *Id.* at 232. HMS objected to the Report, asserting that it should be "rejected to the extent it recommends reimbursement of Siegel's legal fees, pending the conduct by this Court of the mandatory Reform Act review and a determination of the propriety, for Rule 11 purposes, of plaintiffs' having named Siegel as a defendant." *Id.* The district court rejected HMS's argument that Siegel should not recover fees because of his waiver of seeking sanctions against the plaintiffs contained in the stipulation of dismissal, noting that HMS cites no cases in support of this argument and stating that the argument "stands logic on its head." *Id.*

On May 11, 2000, pursuant to Federal Rule of Civil Procedure 54(b), the district court directed entry of its decision that HMS reimburse Siegel for $67,636.73 as a final judgment subject to immediate ap-

peal. Siegel filed a timely notice of appeal on May 26, 2000.

## II. DISCUSSION

### A. Standard of Review

■ "The standard of review of an award of attorney's fees is highly deferential to the district court. Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." *Mautner v. Hirsch*, 32 F.3d 37, 39 (2d Cir.1994) (internal quotation marks and citations omitted). However, where an appellant's contention on appeal regarding an award of attorneys' fees is that the district court made an error of law in granting or denying such an award, the district court's rulings of law are reviewed de novo. *See id.* Siegel contends on appeal that the district court "erred in its interpretation and application of the NYBCL, the governing New York case law, and the judicially created bad faith exception to the American Rule, resulting in the incorrect determination that Mr. Siegel should not be reimbursed his enforcement fees." Thus, we review these legal determinations de novo.

### B. HMS's Lack of Bad Faith

■ "Under the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (citation and internal quotation marks omitted). "[A]n action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Hirschfeld v.*

*Board of Elections*, 984 F.2d 35, 40 (2d Cir.1993) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977)). However, this Court has interpreted this exception restrictively, requiring both "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes, and a high degree of specificity in the factual findings of [the] lower courts." *Oliveri*, 803 F.2d at 1272 (citation and internal quotation marks omitted) (brackets in original).

Siegel argues on appeal, as he did below, that HMS acted in bad faith by refusing to comply with its mandatory indemnification obligation under New York law. The district court did concede that the issue of HMS's bad faith was "regrettably a very close call." *HMS Litig.*, 82 F.Supp.2d at 231. However, the district court concluded that because HMS eventually dropped its untenable position that Siegel did not need to have individual representation, HMS's behavior fell short of "bad faith." *Id.*

■ Siegel argues that the district court's finding that HMS's initial position in litigation was "untenable" should have given rise to an award of costs and fees, because, even though HMS eventually changed positions, it "conducted litigation in bad faith." Siegel asserts that HMS's concession that Siegel needed to have individual representation "came only after the Magistrate Judge already had indicated to HMS that its position was frivolous" and that this change of position did not occur until August 1999, a year after Siegel was dismissed with prejudice from the lawsuit. Siegel lists several examples of HMS's litigation behavior that, Siegel believes, warrant bad faith attorneys fees, including (1) refusing to advance costs in breach of the

covenant of good faith and fair dealing; (2) attempting to thwart Siegel's presentation of his best defense; (3) refusing to provide indemnification based on its untenable position that individual representation was unnecessary; (4) arguing that the stipulation of dismissal waived his rights to attorneys' fees; (5) arbitrarily capping his indemnification at $5,000; (6) insisting on an evidentiary hearing before the magistrate, then backing off this position;[4] and (7) purposefully delaying the adjudication of the indemnification application. Because many of the bases for bad faith asserted by Siegel were never found by the district court and because this Court has strictly construed the bad faith exception to the American rule, the district court's refusal to award Siegel his attorneys' fees based on the bad faith exception is affirmed.

### C. "Fees on Fees" under New York Law and the HMS By-laws

NYBCL § 722(a) authorizes indemnification for corporate directors and officers who are made parties to an action:

> A corporation may indemnify any person made ... a party to an action or proceeding (other than one by or in the right of the corporation to procure a judgment in its favor), whether civil or criminal, including an action by or in the right of any other corporation of any type or kind, domestic or foreign, or any partnership, joint venture, trust, employee benefit plan or other enterprise, which any director or officer of the corporation served in any capacity at the request of the corporation, by reason of the fact that he ... was a director or officer of the corporation, ... against judgments, fines, amounts paid in settlement and reasonable expenses, *including attorneys' fees actually and necessarily incurred as a result of such action or proceeding,* or any appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in ... the best interests of the corporation....

New York Business Corporation Law § 722(a) (emphasis added). However, indemnification is mandatory where the director or officer is successful in the defense of the action:

> A person who has been successful, on the merits or otherwise, in the defense of a civil or criminal action or proceeding of the character described in section 722 *shall* be entitled to indemnification as authorized in such section.

New York Business Corporation Law § 723(a) (emphasis added); *see Sequa Corp. v. Gelmin,* 828 F.Supp. 203, 205 (S.D.N.Y.1993). Corporate officers may seek court intervention in attempting to obtain indemnification.

> Notwithstanding the failure of a corporation to provide indemnification, and despite any contrary resolution of the board ... indemnification *shall* be awarded by a court to the extent authorized under section 722 (Authorization for indemnification of directors and officers), and *paragraph (a) of section 723.* Application therefor may be made, in every case, either:
>
> (1) In the civil action or proceeding in which the expenses were incurred or other amounts were paid, or
>
> (2) To the supreme court in a separate proceeding, in which case the application shall set forth the disposition of any previous application made to any court

---

4. HMS contends that it never sought an evidentiary hearing, and that was a misunderstanding.

for the same or similar relief and also reasonable cause for the failure to make application for such relief in the action or proceeding in which the expenses were incurred or other amounts were paid.

New York Business Corporation Law § 724(a) (emphasis added).

HMS's corporate by-laws echo this language, likewise authorizing indemnification and mandating indemnification where the officer has been successful in defending the action against him.

Siegel argues that, under New York case law interpreting the above provisions of New York statutory law, HMS should be required to pay Siegel his fees incurred in enforcing his indemnification rights. Siegel concedes, however, that there are only two cases that specifically address this issue of "fees on fees" in the corporate indemnification context. In *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913(JFK), 1997 WL 431119, at *2 (S.D.N.Y. July 31, 1997), the district court, pursuant to NYBCL § 724, but without analysis, directed the corporation to forward to the directors' "reasonable expenses and attorneys' fees for the making of these motions [for advancement of expenses under NYBCL § 724(c)] and for expenses and fees incurred from the date the motions were fully submitted and henceforth."

In *Professional Insurance Co. of New York v. Barry*, 60 Misc.2d 424, 428, 303 N.Y.S.2d 556, 560–61 (N.Y.Sup.Ct. N.Y.Co.), *aff'd* 32 A.D.2d 898, 302 N.Y.S.2d 722 (1st Dep't 1969), the court interpreted NYBCL § 725(c), now known as § 724(c), which allows a director or officer to get litigation expenses *pendente lite*. The court concluded that the phrase "such reasonable expenses, including attorneys' fees, ... as are necessary in connection with [the] defense" include those expenses incurred in seeking the expenses. *Id.* at 428–29, 303 N.Y.S.2d 556. The court rejected the company's argument that such expenses were "not necessary to the defense by [the director] in the action instituted against him...." *Id.* at 428, 303 N.Y.S.2d 556. Instead, the court reasoned that "if it were not for the [underlying] action ... there would be no assertion by [the director] of rights to indemnification...." *Id.* The court further reasoned that such a result was consistent with the policy of these indemnification provisions to "encourage directors and officers to assume stewardship responsibilities." *Id.*

Siegel argues that the logic of *Barry* applies equally to his situation. Were it not for the underlying action (and HMS's continued refusal to indemnify), Siegel would not have incurred the fees and expenses connected to his indemnification application. Additionally, to reimburse Siegel for these fees furthers the policy behind corporate indemnification statutes, which is

to 'promote the desirable end that corporate officials will resist what they consider' unjustified suits and claims, 'secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated.' Beyond that, its larger purpose is 'to encourage capable man [and woman] to serve in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.'

*Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 925 n. 45 (Del.Ch.1999) (citations omitted) (brackets in original). Siegel points to an Executive Memorandum issued in 1986 by then Governor Mario Cuomo, which states that "it is crucial to secure the continued service of competent and experienced people in senior corporate positions and to assure that they will be able

to exercise business judgment without fear or personal liability so long as they fulfill the basic duties of honesty, care and good faith." Joint App. at 625 (Corporations–Indemnification of Directors and Officers).

HMS argues that Siegel should not recover the fees on fees, because New York adheres to the "American Rule", which provides that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assocs. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989).

*Hooper* involved a breach of contract, in which Hooper agreed to purchase computer equipment and services from defendant. *See Hooper,* 74 N.Y.2d at 489, 549 N.Y.S.2d 365, 548 N.E.2d 903. The issue in *Hooper* was whether the contract's indemnity clause entitled plaintiff to recover counsel fees incurred in prosecuting the action against defendant also. *Id.* The New York Court of Appeals concluded that the contractual indemnity provision covered disputes by third parties brought against plaintiff, but not disputes *between the parties.* The court ruled that with indemnity contracts, a court "should not infer a party's intention to waive the benefit of the [American] [R]ule unless the intention to do so is *unmistakably clear from the language* of the promise." *Id.* at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903. (emphasis added). The Court applied the "unmistakably clear" language principle it announced, and found none. *Id.*

HMS argues that *Barry,* decided before *Hooper,* cannot be relied upon, because it is a "lower court decision" and failed to analyze or acknowledge the "American Rule." HMS further contends that *Sierra Rutile* cannot be relied upon to support Siegel's position, because it, too, fails to acknowledge the American Rule or provide analysis to support its contrary result.

HMS also argues that *Frater v. Tigerpack Capital, Ltd.,* No. 98 Civ. 3306(SAS), 1998 WL 851591 (S.D.N.Y. Dec.9, 1998) supports its argument that the New York Business Corporation Law provisions at issue do not provide for fees on fees. In *Frater,* the plaintiff, formerly an officer and director of the defendant, sought a declaration of his "termination and severance rights" pursuant to his employment agreement with the defendant. *Frater,* 1998 WL 851591, at *1. The plaintiff argued that he should be indemnified by the defendant for his legal fees under various agreements and under NYBCL § 723 and § 724. *See id.* at *2–*4. The district court rejected these arguments, finding no clear and unmistakable language in any of the contractual provisions for indemnification for actions *between* these parties. *See id.* As to the plaintiff's NYBCL arguments, the district court concluded that the *permissive* indemnification provided for in these statutes did not warrant indemnification absent provisions in the corporations by-laws that would cover this situation. *See id.* at *4. *Frater* does not control here both because it did not involve a "fees on fees" issue at all and because it did not involve the mandatory indemnification provision of NYBCL § 723(a), which applies here because Siegel was completely successful in his defense of the underlying action.[5]

---

**5.** Siegel also argues that the HMS by-laws providing for indemnification contain important differences from the NYBCL provisions, and should be read more broadly. We reject this contention and conclude that the by-laws merely echo the statutory indemnification provisions. The HMS by-laws must be interpreted in accordance with the proper interpretation of New York Business Corporation Law § 722. To the extent the statute can

The magistrate's report, which was adopted by the district court, accepted HMS's argument and concluded that Siegel was not entitled to fees on fees, because *Barry* could not be "reconciled with the general rule in New York that attorneys' fees may not be awarded unless there is specific statutory or contractual authorization" and found no "clear unmistakable language" to alter this general rule. *HMS Litig.*, 82 F.Supp.2d at 236. However, *Hooper* and other cases relied on by the district court and HMS concern contractual indemnification provisions, and do not purport to interpret NYBCL §§ 722–725. Although HMS contends that *Hooper*'s dictates apply to statutory provisions, it appears that its holding requiring "unmistakably clear" language specifically refers to the interpretation of contractual indemnification provisions, and warns that a court should be careful when inferring a party's intention. *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903. *Hooper* does point out that a contractual provision can provide an exception to the American Rule, but does not offer guidance on how to interpret *statutory* indemnity provisions. *Id.* at 491–92, 549 N.Y.S.2d 365, 548 N.E.2d 903.[6]

We therefore conclude that the New York Court of Appeals has not interpreted NYBCL §§ 722, 723, 724 with respect to "fees on fees" in a non-contractual context. Where an "unsettled and significant question of state law . . . will control the outcome of [the] case," 2d Cir. R. § 0.27, we may certify that question to the New York Court of Appeals. *See also* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.17 (2000) (certification is proper when "determinative questions of New York law are involved . . . for which there is no controlling precedent of the Court of Appeals"); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51 (2d Cir.1992) (certifying questions is proper "where [a] statute's plain language does not indicate the answer, or when [we are] presented with a complex question of New York common law for which no New York authority can be found").

Certification is appropriate "when the state's highest court has cast doubt on the

---

properly be interpreted to provide for fees on fees, we would also read the by-laws to provide for them. To the extent that the statute excludes fees on fees, we would hold that the by-laws similarly exclude such coverage.

6. We have found many other cases also involving contractual indemnity provisions interpreted under New York law. *See, e.g., Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.*, 182 F.3d 163, 165 (2d Cir.1999) ("the language of the agreement [must] be 'unmistakably clear' regarding whether the parties to the agreement intend provisions of attorneys' fees to apply to disputes among themselves"); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20–21 (2d Cir.1996) (concluding that contract provision provided no "unmistakably clear statement" that fees on fees were intended); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1266–67 (2d Cir.1987) (concluding that contractual provision for attorneys' fees was

general, with no specific language authorizing fees on fees); *Soberman v. Groff Studios Corp.*, No. 99 Civ. 1005(DLC), 2000 WL 1010288, *2–*3 (S.D.N.Y. July 21, 2000) (interpreting lease provision for indemnification for attorneys' fees, concluding that lease contained no specific language for fees on fees); *Krumme v. Westpoint Stevens, Inc.*, 79 F.Supp.2d 297, 313 (S.D.N.Y.1999) (interpreting contractual provision in pension plan, and concluding that there was no "specific language that would allow the plaintiffs to recover the costs of collecting an award of attorneys' fees"); *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F.Supp. 203, 218 (S.D.N.Y.1997) (contractual provision lacked "unmistakably clear" language); *Bourne Co. v. MPL Communications, Inc.*, 751 F.Supp. 55, 58 (S.D.N.Y. 1990) (same); *A.G. Ship Maint. Corp. v. Lezak*, 69 N.Y.2d 1, 5, 503 N.E.2d 681, 683, 511 N.Y.S.2d 216, 218 (1986) (no attorneys' fees where statute or contract does not provide for them).

... continued validity of one of its earlier holdings, or when where is some law in the intermediate state courts, but no definitive holding by the state's highest tribunal." *Liriano v. Hobart Corp.*, 132 F.3d 124, 132 (2d Cir.1998). This Court recently certified an issue to the New York Court of Appeals, stating that:

It is difficult for us to predict how the state's highest court would decide the issues before us, not only because there are no clearly applicable precedents, but also because there are significant policy concerns which point in different directions.

*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 47 (2d Cir.2001) (internal quotation marks and citation omitted); *see Allstate Ins. Co. v. Serio*, 261 F.3d 143 (2d Cir.2001) (certifying questions to the New York Court of Appeals). The reasoning of *Shaffer* and *Serio* applies equally here.

## III. CONCLUSION

Because there is a dearth of case law on the "fees on fees" issue in this particular context, we hereby respectfully certify the following question to the New York Court of Appeals: Where a corporate officer is "successful" in the defense of an underlying action, within the meaning of New York Business Corporation Law § 723(a), where the corporation unsuccessfully contests the duty to indemnify and contests with partial success the amount of indemnification, and where there is no bad faith on the part of the corporation, does the phrase "attorneys' fees actually and necessarily incurred as a result of such action or proceeding," as used in New York Business Corporation Law § 722(a), provide for recovery of reasonable fees incurred by a corporate officer in making an application for fees before a court (as authorized

by New York Business Corporation Law § 724(a))?

The certified question may be deemed expanded to cover any further pertinent question of New York law involved in this appeal that the Court of Appeals chooses to answer. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance, or declined certification.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendices, and record filed in this Court by the parties.

### Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.