Chief Judge Kaye
(dissenting). We would answer the certified question in the affirmative.
Section 722 (a) of the Business Corporation Law is clear, simple and forthright. Together with section 723 (a), it mandates indemnification for reasonable expenses actually and necessarily incurred as a result of an action against a director of a corporation. The plainly stated limitations on what expenses the corporation must pay the director are that they be “reasonable,” and “actually and necessarily incurred as a result of [the underlying] action.” (§ 722 [a].) In our view, the unequivocal words of the statute include fees reasonably and necessarily incurred by directors in enforcing their statutory right to be free of personal expense in successfully defending their corporate action.
Here, several class action suits — ultimately consolidated into one — were filed in early 1997 against the corporation and certain officers and directors, including appellant, charging respondents with disseminating false and misleading statements to inflate the price of the stock. Appellant, who joined the corporation three months after the alleged wrongdoing and actually purchased shares during the class period, through his own counsel, in August 1998 succeeded in having the complaint dismissed as to him. As to the remaining defendants, the suit continued for approximately three more years, when it was ultimately settled for over $4 million. No one disputes that the remaining individuals were fully indemnified by the corporation.
In the years following appellant’s dismissal, costly litigation battles ensued between him and the corporation as he attempted to recover his fees and expenses. The corporation at first denied, and disputed, the payment of fees to his counsel, then conceded that $5,000 should be enough, and sought reference of the case to a Magistrate, where discovery disputes continued over a full year. At that point the corporation noted that it would “not claim that it was not ‘necessary’ for individual defendants to retain counsel,” and acknowledged that appellant was “probably” entitled to more than $5,000 for his counsel fees. The Magistrate, on October 25, 1999, determined both that separate representation was warranted, and that the claimed fees were reasonable.
In adopting the Magistrate’s Report and Recommendation for $60,959.50 (not $5,000) in fees, and disallowing $17,147.64 *90 in enforcement fees, the District Court rejected appellant’s argument that he should recover enforcement fees based on the corporation’s bad faith in denying his application for indemnification, though it observed that the question of whether the corporation’s actions amounted to bad faith was “regrettably a very close call.” (82 F Supp 2d 227, 231.) The court also noted the “illogic” of denying enforcement fees — a difficulty it felt should not be remedied by a federal court construing New York State law. (Id.)
These facts stand as an example of what will be considered the absence of bad faith on the part of companies denying reimbursement and forcing litigation to recover it. They also demonstrate that denying enforcement fees where reasonable and necessary is a significant impairment of the legislative mandate for indemnification. Defendant companies, behaving like respondent company did here, gain considerable leverage in keeping individual directors in the fold of a common defense, on pain of paying their own legal expenses if they seek to assert meritorious separate defenses.
We believe the New York State Legislature did not require such a disquieting, unsatisfactory result, but permitted recovery of reasonable enforcement fees where enforcement action becomes necessary. That has certainly been the assumption for the past 30-plus years since Professional Ins. Co. of N.Y. v Barry (60 Misc 2d 424, affd 32 AD2d 898 [1st Dept 1969]), now no longer to be relied on (see also Sierra Rutile Ltd. v Katz, 1997 WL 431119, 1997 US Dist LEXIS 11018 [SD NY, July 31, 1997]).
The majority is rightly concerned that indemnification rights not cover expenses far removed from the underlying litigation. So was the New York State Legislature when it explicitly limited indemnification to “reasonable expenses * * * actually and necessarily incurred” (Business Corporation Law § 722 [a]; emphasis added). Expenses “having the most attenuated link” (majority op at 85) to the underlying action obviously fail the statutory test. Nor — as the factual recitation shows — does it stretch the language “beyond the outer limits of meaning to claim that those fees on fees were necessarily incurred by reason of the joinder of Siegel in the securities fraud suits” (ma *91 jority op at 85). No one other than appellant’s counsel sought to have him individually dismissed from a lawsuit that was baseless as to him but continued on for three years, until it was settled.
Regrettably, there is no really decisive legislative history— neither side can point to any. That the indemnification provisions were revised several times, always leaving unchanged the operative language at issue here, is itself inconclusive. As we read the statute, it was unnecessary to revise the statute to include enforcement fees — they are already permitted within the existing language. Nor does the “American rule” requiring parties to bear their own attorneys’ fees offer the answer, because here the right to indemnification is provided by statute, not contract (see Hooper Assoc. v AGS Computers, 74 NY2d 487 [1989]).
Perhaps most importantly, there is a good reason why these fees should be reimbursable, as we believe the Legislature provided. The majority’s conclusion puts a finger on the scale in favor of a corporation and its controlling directors in cases where an individual director, or minority group of directors, may have a legitimate independent legal position at odds with what the corporation would wish to portray as a common defense. Here, had appellant joined the other defendants, he could have been indemnified for all of the expenses of the underlying action when the case was settled years later. Because he was exonerated at the outset — having successfully asserted his own meritorious defense — he is now saddled with the considerable costs of enforcing his right of indemnification.
That result is inconsistent with the language and purpose of the statute. And it is particularly unfortunate in today’s corporate climate, when “it is crucial to secure the continued service of competent and experienced people in senior corporate positions and to assure that they will be able to exercise business judgment without fear of personal liability so long as they fulfill the basic duties of honesty, care and good faith” (Governor’s Mem approving L 1986, ch 513, 1986 McKinney’s Session Laws of NY, at 3171).
Given this unfortunate result, and absent legislative clarification, we certainly join the majority’s concluding observation that directors would do well to provide for such indemnification in bylaws, employment contracts and insurance, if they can. Otherwise, individuals would be well advised to decline board service which, as this case shows, may be personally expensive.
*92 Judges Smith, Wesley and Rosenblatt concur with Judge Levine; Chief Judge Kaye dissents and votes to answer the certified question in the affirmative in a separate opinion in which Judges Ciparick and Graffeo concur.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.