**Carlos PIZARRO, Petitioner,**

v.

**George BARTLETT, Superintendent, Elmira Correctional Facility, Defendant.**

**No. 90 Civ. 5699 (MBM).**

United States District Court, S.D. New York.

Nov. 5, 1991.

Carlos Pizarro, pro se.

Monica R. Jacobson, Asst. Atty. Gen. of State of N.Y., New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Carlos Pizarro petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and the petition is dismissed.

I

On May 2, 1979, petitioner Carlos Pizarro was convicted in New York State Supreme Court, New York County, for robbery in the first degree. *See* N.Y. Penal Law § 160.15 (McKinney 1988). As a persistent felony offender, petitioner was sentenced to a prison term of 25 years to life. After exhausting state remedies, he filed this petition, claiming: (1) he was denied assistance of counsel when the trial court rejected his second request for reassignment of counsel; (2) he was denied his right to due process of law by the trial court's "failure to charge larcenous intent" as an element of robbery; and, (3) he was denied his right to due process of law by jury instructions that improperly shifted the burden of proof on the element of intent.

The petition was referred to Magistrate Judge Sharon E. Grubin who filed a report and recommendation on June 21, 1991. The magistrate judge recommended the petition be denied in its entirety. Petitioner now objects to the magistrate judge's conclusion that the trial court acted within its discretion in denying his second request for reassignment of counsel.

In response to a magistrate judge's recommendation for disposition of a

habeas corpus petition, the district court must follow the procedures set forth in Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1). Pursuant to these provisions, the court is permitted to adopt those sections of the report to which no specific objection is made, so long as those sections are not facially erroneous. *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985); *Mokone v. Kelly,* 680 F.Supp. 679, 680 (S.D.N.Y.1988). When an objection is raised, the court is required to conduct a *de novo* review of the contested sections. Because 28 U.S.C. § 636(b) requires "a *de novo* determination" rather than a *de novo* hearing, the district court is free to place "whatever reliance ... in the exercise of sound judicial discretion, [it chooses] to place on a magistrate's proposed findings and recommendations." *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir. 1989) (quoting *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980)). A hearing is not required. *Id.* Here, the uncontested sections of the report are not facially erroneous and are adopted. Regarding the contested sections, after reviewing the record, I agree with Magistrate Judge Grubin that the trial court acted within its discretion in denying petitioner's second request for reassignment of counsel.

## II

The Sixth and Fourteenth Amendments require that a defendant in a state criminal trial be afforded the right to assistance of counsel. This right extends beyond the freedom to hire an attorney. An indigent defendant charged with a felony is entitled to have counsel appointed at state expense to assist in his defense. "[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963).

The State of New York made every effort to ensure that petitioner received adequate representation and a fair trial. Following petitioner's arrest in April 1978, Gary Greenberg of the Legal Aid Society was appointed to represent him. Greenberg made several court appearances on petitioner's behalf and filed several motions including motions for discovery, motions to suppress evidence, a motion for a bill of particulars and a motion to dismiss the indictment. In August 1978, alleging that Greenberg had been lax in conducting his defense, petitioner moved *pro se* for the appointment of new counsel. The court relieved Greenberg and appointed Jeffrey Traub on September 13, 1978.

During the next several months, Traub made more than a dozen court appearances, filed another motion to dismiss the indictment, and conducted a hearing on the motions to suppress that had been filed by Greenberg. At the conclusion of the January 30, 1979 hearing on the motions to suppress, petitioner requested that he be permitted to proceed *pro se.* The following colloquy ensued:

THE COURT: You would like to represent yourself?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that you are charged with a very serious offense and if you are convicted you could get up to twenty-five years in jail, you understand that?

THE DEFENDANT: I'm aware of that too.

THE COURT: And you understand that you are not trained in law, you are not a graduate of law school, you understand that?

THE DEFENDANT: Yes.

THE COURT: And although you have been in court on numerous times, you have never tried a case yourself?

THE DEFENDANT: There's a first time for everything.

THE COURT: You feel you could abide by the rules of the court?

THE DEFENDANT: Yes, sir.

THE COURT: You want to ask questions of the witnesses?

THE DEFENDANT: Yes.

THE COURT: If you want to represent yourself you can represent yourself and Mr. Traub can remain as your legal ad-

visor and if there's something you do not understand or don't know, you can turn it over to him.

(Minutes of January 30, 1979 pp. 2–4) As a result of this colloquy, petitioner's motion to proceed *pro se* was granted and Traub assumed the role of legal advisor. Once petitioner "knowingly, voluntarily, and unequivocally" waived his right to appointed counsel, the court was required to accede to his request to relieve Traub. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir. 1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

Petitioner became dissatisfied with the arrangement. On March 9, 1979, repeating the exact allegations levelled at Greenberg, petitioner filed a motion requesting "reassignment of counsel." On March 29, 1979, Traub asked the court to address petitioner's application:

> THE COURT: What is that application?
> MR. TRAUB: I am acting as an advisor, he made the application to move *pro se,* but the application is to have me released.
> THE COURT: Well—My notes indicate here that the defendant is going to represent himself and you're going to remain as his legal advisor. He can use you if he wants; he can ignore you if he prefers. That's his pleasure. Let him do whatever he's best advised to do.

(Minutes of March 29, 1979 p. 3) Thus, the case proceeded with petitioner representing himself and Traub acting as his advisor.

Proceedings resumed on April 30, 1979. When the court indicated that it would proceed with jury selection, petitioner requested an adjournment. The panel was nevertheless summoned, sworn, and examined by the court and prosecutor. Petitioner stated that he had no questions for the panel "because defendant is representing himself without counsel, and I need the time to prepare my defense ... I'm not ready to select a jury." (Tr. 12) Petitioner was urged to go forward with *voir dire.* He responded: "I'm not going to because I'm not ready, I'm not ready until you assign me a counsel or advisor to proceed. My motion was denied for counsel." (Tr. 16)

The trial judge advised petitioner to accept Traub's representation: "I strongly urge you to reconsider your position of representing yourself and letting Mr. Traub aid you in that regard. But that is your decision. You can do what you wish." (Tr. 7) Petitioner then reiterated his reasons for seeking Traub's dismissal, stating that Traub "hadn't done anything to prepare my defense," and that as a result he was being "forced to go *pro se.*" (Tr. 9) The court replied that both Greenberg and Traub had performed admirably in petitioner's defense. (Tr. 10)

In his opening statement, petitioner attacked the court. He claimed that the court had refused to assign counsel or allow him to prepare a defense. He did not address the merits of the case. He then demanded that Traub leave the defense table. During the trial, petitioner refused to cross-examine any of the state's witnesses, and rested without presenting any evidence. The jury returned its verdict of guilty of robbery in the first degree.

### III

■ Because the purpose of the Sixth Amendment is to guarantee the defendant a fair trial, *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), the focus of its protection is "the adversarial process, not ... the accused's relationship with his lawyer as such." *United States v. Cronic,* 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984). There is no right to a "meaningful attorney-client relationship" or to be completely satisfied with counsel's performance. *Morris v. Slappy,* 461 U.S. 1, 12–15, 103 S.Ct. 1610, 1616–18, 75 L.Ed.2d 610 (1983). Nor does the Sixth Amendment guarantee that the defendant will be represented by the lawyer of his choice. A court need go no further than ensuring that each defendant has an "effective advocate." *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).

These limitations apply whether an attorney is privately retained or appointed by the state. Although an indigent is entitled to appointed counsel, he is not guaranteed counsel of his choice. *Burgos v. Murphy*, 692 F.Supp. 1571, 1575 (S.D.N.Y.1988). This follows from the government's countervailing interest in the "fair and proper administration of justice." *See United States v. Di Tommaso*, 817 F.2d 201, 219 (2d Cir.1987). Allowing repeated substitution of counsel would result in excessive delay and would hinder the speedy and efficient disposition of cases. Moreover, the potential for abuse is obvious. As the Second Circuit has stated:

> This Court has long recognized that certain restraints must be put on the reassignment of counsel lest the right be "manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice."

*McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.1981) (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir.), *cert. denied*, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963)), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

Whether or not to permit substitution of counsel is within the discretion of the trial judge and turns on the facts of the case. *McKee*, 649 F.2d at 931; *People v. Arroyave*, 49 N.Y.2d 264, 425 N.Y.S.2d 282, 286, 401 N.E.2d 393, 397 (1980). It is not sufficient for defendant to request a new lawyer. "[A] defendant seeking substitution of assigned counsel ... must afford the court with legitimate reasons for the lack of confidence." *McKee*, 649 F.2d at 932; *see United States v. Perez*, 904 F.2d 142, 151 n. 3 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990). As the trial approaches, the interest in avoiding delay and inconvenience becomes stronger, and the defendant is required to make a showing of "good cause" in order to warrant substitution. *McKee*, 649 F.2d at 932; *see Arroyave*, 425 N.Y.S.2d at 286, 401 N.E.2d at 397.

The record shows conclusively that the trial court's refusal to appoint a third attor-ney was not an abuse of discretion, and, in fact, was the proper decision under the circumstances. Traub remained available throughout the proceedings to assist petitioner and, due to his familiarity with the case, could have assumed petitioner's representation at any time. As a result, petitioner had the choice of proceeding *pro se* with Traub's assistance, proceeding *pro se* without assistance, or permitting Traub to represent him. In *McKee*, *supra*, the Second Circuit, held that such an arrangement satisfied the right to assistance of counsel. There, defendant had a choice of continuing with appointed counsel, proceeding *pro se*, or retaining a private attorney. The Court held that in the absence of "good cause" for reassignment such a choice was "not constitutionally offensive." *McKee*, 649 F.2d at 931.

Applying *McKee*, the magistrate judge found that petitioner could not make a showing of "good cause." Petitioner contests this finding. His claim is that he was not given an opportunity to state his reasons for requesting reassignment, and, if he had been given that opportunity, his lack of legal training would have prevented him from articulating those reasons. When a defendant voices a "seemingly substantial complaint about counsel," the court should inquire into the reasons for dissatisfaction. *McKee*, 649 F.2d at 933 (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir.1972)). However, petitioner's argument is flawed in several respects. First, his complaint concerning Traub's performance was obviously without merit and did not require a formal inquiry. In requesting reassignment, petitioner simply repeated the same complaints he raised against Greenberg. Instead of listing any substantive complaints, he simply took a copy of the form he filed in September and, where the name "Greenberg" appeared, substituted "Jeffrey Traub." This suggested that the motion was without substance and was no more than a dilatory tactic. Moreover, a short inquiry was conducted regarding the only substantive complaint raised by petitioner, Traub's failure to request a *Wade* hearing. The trial court concluded that the complaint was frivolous

as it certainly was. There was no pre-trial identification procedure that might have required a hearing under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *See Solomon v. Smith*, 645 F.2d 1179, 1185–87 (2d Cir. 1981). In fact, after Traub explained the background of his decision not to request the hearing, the court commended him for not making "spurious and specious motions." Thus, petitioner never voiced a "seemingly substantial complaint about counsel" which would have required a formal inquiry. *Id.*

Second, in this case, even if a formal inquiry was required, the failure to conduct the inquiry would not constitute grounds for reversal of petitioner's conviction. Petitioner could not have demonstrated "good cause" or even have suggested "legitimate reasons" for substitution. He complained that Traub "failed to visit [him] at [his] place of confinement; ha[d] submitted no motions on [his] behalf; ... and ha[d] not conducted any fact-finding to prepare [his] defense." He later repeated that Traub "hadn't done anything to prepare my defense." (Tr. 9) It is clear from the record however that petitioner could not have established these claims. Traub provided petitioner with able representation, making numerous motions and court appearances in conducting his defense. As the trial judge stated, it is apparent "from examination of the court file and ... from Mr. Traub's previous conduct that he had done everything in his power on [petitioner's] behalf." (Tr. 10) Thus, petitioner's reasons for seeking substitution were considered by the trial judge and found meritless. A formal inquiry was therefore unnecessary. " '[W]hen ... an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more.' " *McKee*, 649 F.2d at 934 (holding that failure to conduct formal inquiry was harmless error) (quoting *Brown v. United States*, 264 F.2d 363, 369 (D.C.Cir.) (en banc) (Burger, J. concurring), *cert. denied*, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959)).

Petitioner's argument that, due to lack of legal training, he was unable to articulate grounds for substitution is similarly unpersuasive. The record reveals that prior to his decision to stand mute at trial, petitioner was a vigorous and vocal advocate on his own behalf. He filed, in addition to a successful first motion requesting substitution of counsel, numerous other motions including discovery motions, motions to dismiss, and a motion to suppress. In addition, in his request to proceed *pro se*, petitioner assured the court that he was prepared to conduct legal proceedings. When it suited him, petitioner was willing and able to explain his concerns and utilize motion practice to advance his cause. In any event, stating reasons for seeking substitution of counsel does not require legal training. Petitioner managed to state his reasons; they simply did not justify reassignment of counsel.

Petitioner was provided with two able lawyers to assist in his defense. Instead of availing himself of their assistance, he chose to stand by idly during his trial. Whether this tactic was meant to delay the trial, create grounds for appeal, or make some sort of statement, petitioner cannot now claim that he was denied assistance of counsel. Rather, in appointing two competent attorneys, New York adequately safeguarded petitioner's Sixth Amendment rights. It was petitioner who prevented counsel from assisting in his defense. Therefore, Carlos Pizzaro's petition for a writ of habeas corpus is denied and the petition is dismissed. Because the petition is objectively frivolous, a certificate of probable cause will not issue.

SO ORDERED.