**Angela BANDHAN, Plaintiff,**

v.

**LABORATORY CORPORATION OF AMERICA, Defendants.**

**No. 99 CIV.12085.**

United States District Court, S.D. New York.

Nov. 26, 2002.

Lisa R. Lipman, New Rochelle, NY, for Plaintiff.

John Ridley, Drinker & Biddle, Florham Park, NJ, for Defendants.

## ORDER

BERMAN, District Judge.

### I. Introduction

On or about December 16, 1999, Plaintiff Angela Bandhan ("Plaintiff"), filed this action against her former employer, Laboratory Corporation of America ("Defendant" or "LabCorp."), alleging that Defendant discriminated against her because of her race and retaliated against her for complaining of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et. seq.* (1994) ("Title VII"), 42 U.S.C. § 1981, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et. seq., as amended ("NYSHRL").

On or about May 10, 2001, Defendant moved for summary judgment ("Defendant's Motion") under Rule 56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."); and on or about July 11, 2001, Plaintiff filed an opposition to Defendant's Motion. Defendant replied on August 3, 2001.

On March 26, 2002, United States Magistrate Judge George A. Yanthis, to whom this matter had been referred, issued a report and recommendation ("Report") recommending that Defendant's Motion be granted as to Plaintiff's failure to promote and unequal pay claims, Report at 7–8, and denied as to Plaintiff's wrongful termination and retaliation claims. *Id.* at 10–11.

The Report advised the parties that "[p]ursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed.R.Civ.P., the parties shall have ten (10) days from receipt of this Report to serve and file written objections to the Report and Recommendation." *Id.* at 11. On April 30, 2002, Defendant filed objections to the Report ("Defendant's Objections"); and on May 1, 2002, Plaintiff's objections were filed ("Plaintiff's Objections"). Defendant

filed a reply to Plaintiff's Objections on June 4, 2002 ("Defendant's Reply"); and on June 6, 2002, Plaintiff filed an opposition to Defendant's Objections ("Plaintiff's Opposition"). **For the reasons set forth below the Court adopts the Report in its entirety.**[1]

## II. Standard of Review

 A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin,* 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y. 1988).

## III. Analysis

The facts as set forth in the Report are incorporated herein by reference unless otherwise noted. The Court has conducted a *de novo* review of the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's Objections and replies.[2] Neither parties' submissions provides a basis for departing from the Report's recommendations.

### A. Discrimination Claims

Discrimination claims under Title VII, as pointed out by Magistrate Yanthis, are often analyzed using the three step burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] Under *McDonnell,* a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate "a legitimate, non-discriminatory reason" for the employment action. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[O]nce the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the presumption raised by the *prima facie* case is rebutted and drops from the case." *Id.* The plaintiff "must [then] be afforded the opportunity to prove, by a preponderance of the evidence

1. The Court is not here ruling upon the ultimate merits of Plaintiff's claims.

2. As to any portions of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). Any Objections which are not specifically discussed in this Order have been considered and rejected.

3. "Claims under ... § 1981 are analyzed under the same framework as claims brought pursuant to Title VII," *see McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997), and New York courts apply similar standards as those applied by Federal courts in assessing discrimination and retaliation claims. *See, e.g., Smith v. Xerox Corp.,* 196 F.3d 358, 363 n. 1 (2d Cir.1999) ("claims under the NYSHRL are analyzed identically to claims under ... Title VII, [and consequently] the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under ... Title VII") (citations omitted).

that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143, 120 S.Ct. 2097 (internal quotations omitted). "The test for summary judgment is [ultimately] whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir.2000).

**Failure to Promote**

■ "To state a claim for an allegedly discriminatory failure to promote, a plaintiff must allege that (1) he [or she] is a member of a protected class; (2) he [or she] is qualified for the position; (3) he [or she] applied for and was denied promotion to the position; and (4) the position remained open and the employer continued to seek applicants." *Lee v. Overseas Shipholding Group, Inc.,* 2001 WL 849747, at *5 (S.D.N.Y. July 30, 2001) (citation omitted).[4]

■ Magistrate Yanthis properly concluded that Plaintiff did not state a prima facie case because Plaintiff could not demonstrate that the Phlebotomy Supervisor position she complains about was open in May of 1997. "[T]he undisputed facts establish that the [supervisor] position for which plaintiff applied was *not vacant* and, in fact, had been occupied by [Juliette] Morales ["Morales"] for some time. Consequently, plaintiff cannot demonstrate that the position remained open and that LabCorp continued to seek applicants."[5] Report at 7 (emphasis in original); *see Brown v. Coach Stores, Inc.,* 163 F.3d 706,

710 (2d Cir.1998) (a plaintiff must allege that she "applied for a specific [available] position or positions and was rejected therefrom, rather than merely asserting that on several occasions she ... generally requested promotion.").

**Disparate Pay**

Plaintiff argues, among other things, that because she was not promoted to Phlebotomy Supervisor earlier than she was, her pay was kept "artificially low" by Defendant since she was acting as a "de facto" supervisor for three years, Plaintiff's Objections at 20, and this failure to pay her as a supervisor "represents disparate pay between two individuals," i.e., Plaintiff and Morales. *Id.* at 20.

■ In order to establish a prima facie case of discriminatory disparate pay under Title VII, a plaintiff must show: (1) that she was a member of a protected class; (2) that she was paid less than similarly situated nonmembers of her protected class; and (3) evidence of discriminatory animus. *See Belfi v. Prendergast,* 191 F.3d 129, 140 (2d Cir.1999).

■ As Magistrate Yanthis correctly determined, "[P]laintiff fails to establish a prima facie case of unequal pay." Report at 8. For one thing, Plaintiff was unable to establish that she and Morales were "similarly situated." *See Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 64 (2d Cir.1997). For example, during the first two years of Plaintiff's employment, Mor-

---

4. It is undisputed that Plaintiff, a non-white woman of Guyanese national origin, is a member of a protected class. She was also qualified for the position of Phlebotomy Supervisor, as she did in fact receive that title in August of 1998. Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Statement of Facts"), dated May 10, 2001, ¶ 9. Plaintiff was terminated by Defendant on May 25, 1999. *Id.* ¶ 23.

5. Ms. Morales held the position of Phlebotomy Supervisor when Plaintiff applied for that position in 1997 and Ms. Morales remains in that position today. Statement of Facts, ¶ 6. When another Phlebotomy Supervisor position opened up in 1998, Plaintiff was promoted to that position. *Id.* ¶ 9.

ales (as a Phlebotomy Supervisor) was responsible for supervising other phlebotomists and patient service technicians while Plaintiff (then a senior phlebotomist) performed lab tests and patient testing. Statement of Facts, ¶ 4. Also, Morales had greater work experience than Plaintiff; Morales held a Phlebotomy Supervisor position for over six years prior to Plaintiff's promotion; and Morales had been employed by Defendant at least three years longer than Plaintiff. Statement of Facts, ¶¶ 4, 6. *See, e.g., Koster v. Chase Manhattan Bank*, 687 F.Supp. 848, 859 (S.D.N.Y. 1988) ("[u]nequal pay for jobs which are merely similar does not subject an employer to Title VII liability"); *Wright v. Milton Paper Co.*, 2002 WL 482536, at *8–9 (E.D.N.Y. Mar. 26, 2002) (finding plaintiff not similarly situated to employees that allegedly performed the "same or similar duties" since plaintiff had less experience in the position and was with the company a shorter time).[6]

Second, although Plaintiff earned $15.866 per hour as a Phlebotomy Supervisor in 1998 while Morales earned $18.954 per hour, Statement of Facts, ¶¶ 27–28, Morales, unlike Plaintiff, had been a Supervisor for over six years and, as noted, was a former NHL employee with greater seniority. Plaintiff "does not dispute that Roche and NHL had different pay scales prior to the merger, or that NHL's pay scale was higher than Roche's." Report at 8. Moreover, "from 1995 through June 1999, plaintiff's salary increased by 32.5% while Morales's salary increased by 9.9%." *Id.* Plaintiff "fails to demonstrate that the pay disparity occurred under circumstances that raise an inference of discrimination." Report at 8; *see, e.g., Fayson*, 2002 WL 31194559, at *6 ("multiple promotions and raises during the relevant time frame" undermined allegations of discriminatory intent).

### *Wrongful Termination*

██ Magistrate Yanthis properly determined that there is a genuine issue of material fact as to whether Defendant's proffered reason for Plaintiff's termination in 1999, i.e., a general reduction in force at LabCorp., is a pretext for discrimination. Report at 9–10.[7] He pointed to the deposition of Sylvester Malangone ("Malangone"), LabCorp.'s General Manager for the Metropolitan New York Region, who testified that while Malangone "recommended ... plaintiff not be rehired in any position because he disagreed with plaintiff's handling of a situation stemming from a patient complaint," Malangone, at the same time, "admitted that plaintiff addressed the situation in accordance with

6. Morales was employed by National Health Labs ("NHL") as a supervisor in 1990 and was promoted to Phlebotomy Supervisor in 1992, one year prior to Plaintiff's hiring by Roche Biomedical Laboratories ("Roche") in 1993 as a senior phlebotomist. In 1995, when NHL and Roche merged to become Defendant LabCorp., Morales continued as a Phlebotomy Supervisor, while Plaintiff initially remained as a Group Leader. Statement of Facts, ¶¶ 2, 4, 6, 13. *See Fayson v. Kaleida Health, Inc.*, 2002 WL 31194559, at *6 (W.D.N.Y. Sept. 18, 2002) (plaintiff "not so similarly qualified that she should receive the same compensation as employees with more experience and/or skills—i.e., employees who held higher positions under the pre-merger

structure"); *Batista v. Union of Needleworkers*, 2000 WL 1760923, at *3 (S.D.N.Y. Nov. 30, 2000) ("[s]adly, plaintiff fails to take into account the different levels of responsibility and seniority among Organizing Directors that result in their being differently situated").

7. In order to establish a prima facie case of wrongful termination, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was terminated; and (4) she was terminated under circumstances that raise an inference of discrimination. *See Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir.2001).

company policy," *id.* at 10, suggesting possible pretext.[8] Defendant argues unpersuasively that the Report's determination of a "triable issue of pretext" is not accurate because: (i) the decision to eliminate Plaintiff's position and terminate her employment was allegedly made in April 1999 and Malangone "did not become aware of [Plaintiff's] mishandling of a patient complaint until May 1999"; and (ii) the testimony does not demonstrate that Plaintiff handled the patient complaint in accordance with company policy. Defendant's Objections at 2–4. These are fact issues to be resolved by a jury. *See Forts v. City of New York Dept. of Correction*, 2002 WL 31174465, at *8 (S.D.N.Y. Sept. 30, 2002) ("genuine material issues of fact on the pretext question . . . need to be resolved at trial").[9]

## B. Retaliation

Magistrate Yanthis determined that Plaintiff's protests about discrimination (i) in a letter, dated March 18, 1999, to Michael Snyder, LabCorp. Senior Vice–President, Mary Shinick, Human Resources Director, and Charles Ottley, New York City Operations Manager, and (ii) during an April 13, 1999 meeting between Plaintiff, Ms. Shinick, Mr. Ottley, and Nancy McKenna, Regional Phlebotomy Manager, constituted protected activity in "temporal proximity" to her termination on May 25, 1999. Report at 10–11. The Magistrate also found that "for the same reasons previously discussed in the context of plaintiff's discrimination claims, a question of fact exists as to whether defendant's proffered reason for plaintiff's termination is [also] a pretext for retaliation." *Id.* at 11. Defendant argues that neither the March 18, 1999 letter, nor the April 13, 1999 meeting constitute "protected activity" and that no "causal connection" exists between Plaintiff's complaints and her termination. Defendant's Objections at 6, 8.

■ To establish a prima facie case of retaliation, a plaintiff must establish (1) that she was engaged in a protected activity under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) a causal connection between the adverse action and the protected

---

8. The record demonstrates that Malangone wrote a memo, dated May 26, 1999, recommending that Plaintiff not be rehired for any open position because she "exhibited a certain ineptitude as a supervisor." *See* Declaration of Lisa R. Lipman in Opposition to Defendant's Objections to the Magistrate Judge's Report and Recommendation ("Lipman Declaration"), Ex. D. Magistrate Yanthis noted that "[t]he record also establishes that [Malangone] made no such recommendation for any other employee who had been terminated." Report at 9.

9. Malangone testified that he learned of the patient complaint in "late [S]pring of '99. April, May, June." Lipman Declaration, Ex. I at 90. And, while Defendant points to an April 19, 1999 memorandum to establish the date "the decision to terminate Bandhan's employment was made," Defendant's Objections at 3, the memorandum "makes no specific recommendation that [Plaintiff's position] be eliminated, or that Plaintiff be terminated." Plaintiff's Opposition at 6. And, in fact, Plaintiff was not terminated until May 25, 1999. The timing of Malangone's recommendation is so close to Plaintiff's actual dismissal that it raises an issue of fact as to whether the reasons offered for her termination were pretextual. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir.1998) ("strong temporal correlation" between plaintiff's complaints to company and her termination was sufficient to find "a sufficient basis for a trier of fact to doubt the persuasiveness of the company's proffered evidence and ultimately to find that the reasons offered [for plaintiff's dismissal] were pretextual"). Malangone also acknowledged that there was no company policy which necessarily required Plaintiff to act any differently than she did. Lipman Declaration, Ex. I at 118–19, 212.

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir.2001).

Plaintiff has demonstrated a prima facie case of retaliation. First, Plaintiff's March 18, 1999 letter, which set forth a complaint against LabCorp.'s Regional Manager, Nancy McKenna, and which followed a verbal dispute between McKenna and Plaintiff, stated that "I am officially filing this formal complaint against Nancy McKenna ... The facts are based on my perception as harassment, discrimination, unprofessional conduct as a superior, fabricated statements, double standards ... and verbal abuse." Lipman Declaration, Ex. A. The letter constitutes protected activity. Report at 11; *see Little v. National Broadcasting Co., Inc.*, 210 F.Supp.2d 330, 384 (S.D.N.Y.2002) (protected activity may "take the form of less formal protests, such as making complaints to management, writing critical letters to customers, or expressing support of co-workers who have filed charges") (quotations and citation omitted); *see also Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). Second, Defendant was aware of Plaintiff's alleged grievance or complaint. Statement of Facts, ¶¶ 34, 36. Third, an adverse action was taken against Plaintiff in that she was terminated on May 25, 1999. *Id.* ¶ 23. Fourth, given the temporal proximity between Plaintiff's letter and her termination, a causal nexus—sufficient to survive summary judgment—has been established. Report at 10–11; *see Collette v. St. Luke's Roosevelt Hosp.*, 2002 WL 31159103, *8 (S.D.N.Y.) ("[i]t is well established that 'temporal proximity can demonstrate a causal nexus'") (quot-

ing *Manoharan*, 842 F.2d at 593); *McCulley v. Southern Conn. Newspapers, Inc.*, 98 F.Supp.2d 216, 224 (D.Conn.2000) (finding causal connection and denying summary judgment on retaliation claim where plaintiff's complaint was filed three months prior to her termination).[10]

## IV. Conclusion

The Court adopts the Report and, for the reasons stated therein and herein, grants in part and denies in part Defendant's motion for summary judgment [35]. The parties are directed to participate in a trial scheduling/settlement conference on December 5, 2002 at 11 a.m., in Courtroom 706 of the United States Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

---

10. The Court also agrees with Magistrate Yanthis that "a question of fact exists as to whether plaintiff's statements at the April 13th meeting constituted a protected activity." Report at 11; *see* Lipman Declaration, Ex. J at 290 (Plaintiff's supervisor, Charles Ottley, testified that Plaintiff stated at the meeting that she was being harassed or discriminated against because of her race); *id.*; Ex. E at 265 (Mary Shinick testified that Plaintiff did not raise such issues during the April 13 meeting).