Anthony PITTER, Petitioner,

v.

Brian FISCHER, Superintendent, Sing Sing Correctional Facility, Respondent.

No. 01 CIV. 4545 RMBDF.

United States District Court, S.D. New York.

Dec. 6, 2002.

---

Anthony Pitter, Ossining, NY, Pro se.

Bernadine Agocha, Esq., Assistant Attorney General, New York City, for Respondent.

## ORDER

BERMAN, District Judge.

### I. Background

On or about May 3, 2001, Anthony Pitter ("Pitter" or "Petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his March 5, 1997 conviction in Supreme Court, New York County, for criminal sale of a controlled substance in the third degree (New York Penal Law § 220.39[1]). Pitter's conviction was affirmed on February 22, 2000 by the Appellate Division, First Judicial Department, *People v. Pitter*, 269 A.D.2d 287, 704 N.Y.S.2d 456 (1st Dep't 2000). Leave to appeal was denied by the New York Court of Appeals on May 4, 2000. *See People v. Pitter*, 95 N.Y.2d 802, 711 N.Y.S.2d 170, 733 N.E.2d 242 (2000).

In his Petition, Pitter alleges that "the evidence [presented at trial] was insuffi-

cient as a matter of law to prove beyond a reasonable doubt that [he] sold cocaine." Petition at 5A. Respondent opposed the Petition on or about October 29, 2001. Petitioner replied on or about November 27, 2001.

On July 8, 2002, Magistrate Judge Debra Freeman, to whom the matter had been referred, issued a Report and Recommendation ("Report"), recommending that the Petition be denied. Petitioner filed objections to the Report on or about July 30, 2002 ("Petitioner's Objections"). **For the reasons stated below, the Report is adopted in all respects and the Petition is dismissed.**

## II. Standard of Review

This Court may adopt those portions of a magistrate's report to which no objections have been made and which are not facially erroneous. *See* Fed.R.Civ.P. 72(b); *see, e.g., Letizia v. Walker,* No. 97 Civ. 0333, 1998 WL 567840, at *1 (W.D.N.Y. Aug. 27, 1998); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985). The court conducts a de novo review of those portions of the report to which objections have been made. *See, e.g., Letizia,* 1998 WL 567840 at *1; *Pizarro,* 776 F.Supp. at 817. Once objections are received, a district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See, e.g., DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y. 1988). Where, as here, the petitioner is proceeding *pro se,* "leniency is generally accorded." *Bey v. Human Resources Admin.,* No. 97 Civ. 6616, 1999 WL 31122, at *2 (E.D.N.Y. Jan. 12, 1999).

## III. Analysis

The Court has conducted a *de novo* review of the record herein, including, among other things, the Report, Petitioner's Objections, and applicable legal authorities. The Court adopts Magistrate Freeman's findings of fact as supported by the record and concludes that Magistrate Freeman's legal determinations are correct in all material respects.

### Petitioner's Objections

In his objections, Petitioner raises substantially the same arguments as were raised in the Petition. Petitioner's Objections do not provide a basis for departing from the Report's recommendations.

"In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." *United States v. Giraldo,* 80 F.3d 667, 673 (2d Cir.1996). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "Upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution." *Id.* After a thorough consideration of the evidence presented at Petitioner's trial, Magistrate Freeman correctly determined that "there was sufficient evidence for the jury to conclude that Petitioner did sell narcotics." Report at 13.

### Certificate of Appealability

Petitioner argues that a certificate of appealability should be issued because "the observation sale in this case from a rooftop raises a substantial question." Petitioner's Objections at 3. Petitioner cites cases where, in contrast to the case at bar, the evidence was insufficient to establish a sale. *Id.* (listing cases). Because, as Magistrate Freeman correctly determined, Pitter has not made a "substantial showing of

the denial of a constitutional right," this Court will not grant a certificate of appealability. Report at 14; *see Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

### IV. Conclusion

The Court adopts Magistrate Freeman's Report in all respects and, for the reasons stated therein and herein, dismisses the Petition. A certificate of appealability is denied. The Clerk is respectfully requested to close this case.

### REPORT AND RECOMMENDATION

FREEMAN, United States Magistrate Judge.

To The Honorable Richard M. Berman, District Judge.

### *INTRODUCTION*

*Pro se* petitioner Anthony Pitter ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, New York County. Upon a jury verdict, Petitioner was found guilty of the criminal sale of a controlled substance in the third degree under New York Penal Law § 220.39(1). Petitioner was sentenced to a term of six to twelve years. He is currently incarcerated at Sing Sing Correctional Facility.

Petitioner challenges his conviction on the ground that the evidence presented at

trial was insufficient as a matter of law to prove Petitioner's guilt beyond a reasonable doubt. (*See* Pet., ¶ 12(A).)[1] Respondent argues that the petition should be dismissed because Petitioner's claim is without merit. For the reasons stated below, I recommend that the petition be dismissed.

### *FACTUAL BACKGROUND*

On July 19, 1996, Officer Patrick G. Ferguson ("Ferguson") was assigned to a narcotics surveillance operation in midtown Manhattan. (Tr. III at 382, 387.)[2] Ferguson was stationed at an observation post located on the roof of a building at 301 West 45th Street, at Eighth Avenue. (*Id.* at 388, 391–92, 454–55.) With him on the rooftop was Officer Gargan ("Gargan"). (*Id.* at 387–88.) Ferguson's supervisor, Sergeant Jose A. Hernandez ("Hernandez") and Officer Olinto ("Olinto") were in a van at the corner of West 48th Street and Broadway. (*Id.* at 488–89.) Ferguson had with him a pair of binoculars, which magnified images to ten times their actual size. (*Id.* at 357, 389–90.) Ferguson testified that, at approximately 2:45 a.m., Ferguson used his binoculars and observed Petitioner standing on the corner of 46th Street and Eighth Avenue. (*Id.* at 392–395.) According to Ferguson, although it was dark outside, street lights and store windows in the area provided sufficient

1. "Pet." refers to Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254, dated May 3, 2001.

2. The transcript of Petitioner's trial was submitted to the Court in two sections. The second section, however, contains a number of parts, each with their own page numbering system. For ease of reference, the transcript will be cited as follows. "Tr. I" will refer to the Petitioner's pre-trial *Mapp* hearing, on January 31, 1997, before the Honorable Marcy L. Kahn. "Tr. II" will refer to the argu-

ments by the prosecution and defense counsel on the *Mapp* issues, and to Justice Kahn's ruling, on January 31, 1997, on the *Mapp* issues. "Tr. III" will refer to Petitioner's pre-trial *Sandoval* hearing, which took place on February 27, 1997, the *voir dire* minutes, dated February 28, 1997, and Petitioner's trial, which took place from March 3, 1997, to March 5, 1997. "Tr. IV" will refer to Petitioner's sentencing, which took place on April 18, 1997, "Tr. V" will refer to the execution of sentence, on May 22, 1998.

light in the area to allow him to observe the scene. (*Id.* at 403, 459–60.)

Between 3:10 a.m. and 4:00 a.m., Ferguson observed three individuals approach Petitioner and engage in "hand-to-hand" exchanges with Petitioner. (*Id.* at 397–99.) At approximately 4:25 a.m., a fourth individual named Jeffrey Huhn ("Huhn") approached Petitioner. (*Id.* at 401–02, 460–61.) Following a brief conversation with Petitioner, Huhn walked over to a nearby telephone booth where he appeared to be making a telephone call. (*Id.* at 402, 463–64.) When Huhn put down the telephone receiver, Petitioner walked over to the booth, and Huhn handed Petitioner a sum of money. (*Id.* at 402, 464.) After receiving the money, Petitioner reached into a bag that he was holding and handed two objects from the bag to Huhn. (*Id.* at 402, 465–68.) Huhn then began to walk away from the area. (*Id.* at 403–04.) At this point, Ferguson sent a radio transmission to the other officers working with him. (*Id.* at 404.) Ferguson described Huhn to Hernandez and Olinto, and told them that he believed that Huhn had just purchased narcotics. (*Id.*) Hernadez saw Huhn, who was the only person on the street matching the description given by Ferguson, walking west on 47th Street. (*Id.* at 490.) As the officers approached, Huhn threw something on the ground. (*Id.*) Hernandez immediately picked up the object, which he recognized as crack cocaine, and then arrested Huhn. (*Id.* at 490–92, 508.) While searching Huhn, Hernandez noticed that Huhn's fingers were coated with a white sugar-like substance, which Hernandez suspected was crack cocaine. (*Id.* at 492–93, 508.) Hernandez told Ferguson by radio transmission that he and Olinto had found narcotics on Huhn. (*Id.* at 493.)

Meanwhile, Ferguson continued to observe Petitioner, and saw a female, whom he recognized as a prostitute, conversing with Petitioner. (*Id.* at 408–409, 473.) During the conversation, the female appeared to be gesturing toward 47th Street, where Hernandez had just arrested Huhn. (*Id.* at 410, 474, 492.) Ferguson radioed Hernandez and told him that he believed that the female had tipped Petitioner off about Huhn's arrest. (*Id.* at 410.) Hernandez then told Ferguson to go down and arrest Petitioner, which Fernandez, along with Gargan, proceeded to do. (*Id.* at 411, 413, 494.) Following Petitioner's arrest, Gargan removed a sum of money from the pocket of Petitioner's pants. (*Id.* at 413.)

At the precinct, Olinto searched Huhn and recovered what appeared to be marijuana from Huhn's wallet. (*Id.* at 509–10, 531–32.) Hernandez and Olinto then gave Ferguson the object that Huhn had thrown to the ground. (*Id.* at 414–415, 478–79.) Ferguson vouchered the object and sent it to the police laboratory, which, upon testing, positively determined that it was cocaine. (*Id.* at 415–426, 478, 496, 527.)

## PROCEDURAL BACKGROUND

### A. Pre–Trial

Petitioner has not raised any issues in this Court related to his pre-trial proceedings, which may be briefly summarized as follows. On January 31, 1997, a pre-trial *Mapp* hearing was held before the Honorable Marcy L. Kahn, in the Supreme Court of New York, New York County.[3] At that hearing, Petitioner's counsel sought to suppress certain physical evidence, including a sum of money recovered from Petitioner.

---

**3.** A *Mapp* hearing is held pursuant to *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), to determine whether evidence was obtained in violation of Petitioner's Fourth Amendment right to be free from unreasonable search and seizure.

(Tr. II at 1–4.) The trial court denied the motion to suppress. (*Id.* at 14–18.)

On February 27, 1997, a pre-trial *Sandoval* hearing was held before the Honorable Bruce Allen, in the Supreme Court of New York, New York County.[4] At the hearing, Petitioner's counsel sought to preclude the prosecution from questioning the Petitioner about the circumstances of a prior conviction if he chose to testify on his own behalf. (Tr. III at 28–29.) The trial court ruled that the prosecution could question Petitioner about whether he had been convicted of a felony, but could not question Petitioner about the underlying facts of that conviction. (*Id.* at 30–31.) Certain other evidentiary issues were also raised at the February 27 hearing (*id.* at 2–26); as noted above, none of these issues are relevant here.

### B. Trial

Petitioner was tried by a jury from February 28, 1997, through March 5, 1997. At trial, the prosecution's witnesses were Laura Badger, Ferguson, Hernandez, and Syeeda Farooqui. Petitioner presented no witnesses and did not testify on his own behalf. At the close of the prosecution's case, Petitioner's counsel moved to dismiss the case on the ground that the prosecution failed to establish a prima facie case. (Tr. III at 532–533) The court reserved decision and submitted the case to the jury.[5] (*Id.* at 534.)

On March 5, 1997, the jury found Petitioner guilty of criminal sale of a controlled substance in the third degree. (*Id.* at 623.) On April 18, 1997, Petitioner was sentenced to a term of six to twelve years.

(Tr. IV at 10.) Petitioner, however, did not appear at the sentencing, and sentence was not executed until May 22, 1998, when Petitioner was located. (Tr. V at 5.)

### C. Direct Appeal

On May 13, 1997, Petitioner filed a notice of appeal with the Appellate Division, First Department. (*See* Respondent's Affidavit in Opposition, dated October 29, 2001 ("Resp.Aff."), ¶ 4, Ex. C.) On appeal, Petitioner was represented by the Center for Appellate Litigation. (Resp.Aff., Ex. D.)

In his brief on appeal, Petitioner argued that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that he sold crack cocaine to Huhn because, although Ferguson testified that he saw a hand-to-hand transaction take place between Petitioner and Huhn, Ferguson could not see what Petitioner passed to Huhn. (*Id.* at 7.) In addition, because the police recovered both marijuana and crack cocaine from Huhn, and did not recover any narcotics from Petitioner, Petitioner argued that it was just as likely that Petitioner had handed Huhn marijuana as cocaine. (*Id.* at 7–10.) Petitioner argued that in order to sustain a conviction for the criminal sale of a controlled substance in the third degree, the prosecution must prove beyond a reasonable doubt that the defendant knowingly and unlawfully sold a narcotic drug. (*Id.* at 8.) Since marijuana is not a narcotic drug, Petitioner contended that the prosecution failed to meet that burden, and that Petitioner's conviction should therefore be vacated.

---

4. A *Sandoval* hearing is a pre-trial hearing whereby a defendant, before deciding whether to testify, may seek an advance ruling from the court to prohibit the prosecution's use of prior criminal acts for impeachment purposes. *See People v. Sandoval*, 34 N.Y.2d 371,

374, 357 N.Y.S.2d 849, 854–55, 314 N.E.2d 413 (1974).

5. The trial court eventually denied Petitioner's motion, at the time of his sentencing. (Tr. IV at 9.)

(*Id.*) The prosecution opposed Petitioner's claim. (Resp.Aff., Ex. E.)

On February 22, 2000, the Appellate Division affirmed Petitioner's conviction. *See People v. Pitter*, 269 A.D.2d 287, 704 N.Y.S.2d 456 (1st Dep't 2000). In its opinion, the Appellate Division concluded that the verdict "was based on legally sufficient evidence and was not against the weight of the evidence" because "the totality of the evidence provided ample basis for the inference that the cocaine found in the buyer's possession was sold to him by defendant in the transaction witnessed by the officer." 269 A.D.2d at 287, 704 N.Y.S.2d at 456.

In a letter dated February 25, 2000, Petitioner sought leave to appeal the affirmance of his conviction to the New York Court of Appeals. (*See* Resp. Mem., Ex. G.) The Court of Appeals denied leave to appeal on May 4, 2000. *See People v. Pitter*, 95 N.Y.2d 802, 711 N.Y.S.2d 170, 733 N.E.2d 242 (2000). The instant petition followed.

### DISCUSSION

### I. *EXHAUSTION*

■ A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the " 'opportunity to pass upon and correct' alleged violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275, 92 S.Ct. 509 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971)). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994) (citation omitted).

■ In this case, Petitioner has satisfied his exhaustion requirement by raising his claim on direct appeal. When the Appellate Division rejected his claim, Petitioner sought and was denied leave to appeal to the New York Court of Appeals. Thus, by the time Petitioner filed his habeas petition, his claim was exhausted.

### II. *STANDARD OF REVIEW*

The standard of review governing this matter is set out in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The relevant portion of AEDPA, codified at 28 U.S.C. § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1)

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the

Supreme Court clarified the meaning of the "contrary to" and "unreasonable application" clauses of AEDPA Section 2254(d)(1). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent, *id.* at 405, 120 S.Ct. 1495, or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result, *id.* at 406, 120 S.Ct. 1495. An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to the particular facts before it. *Id.* at 413, 120 S.Ct. 1495. The Supreme Court has explained that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S.Ct. 1495. Thus, the writ may not issue simply because the state court decision is erroneous or incorrect; rather, the application must also be unreasonable. *Id.* at 411, 120 S.Ct. 1495.

## III. *PETITIONER'S CLAIM*

### A. *Applicable Legal Standards*

 In this action, Petitioner challenges his conviction on the ground that the evidence presented at trial was insufficient as a matter of law to prove his guilt beyond a reasonable doubt. (*See* Pet., ¶ 12(A).) A challenge to the sufficiency of the evidence is a constitutional claim warranting federal habeas review. *See Dixon*

*v. Miller*, 293 F.3d 74, 82, n. 3 (2d Cir. 2002) ("States are free to define the elements of, and defenses to crime. Once states have promulgated laws to define criminal conduct, however, federal due process protects a defendant from conviction unless he is shown in a fair proceeding to have violated those laws.") (quoting *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir.2001)).[6]

"In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." *United States v. Giraldo*, 80 F.3d 667, 673 (2d Cir.1996), *abrogated on other grounds by Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Such an inquiry "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,'" rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. 2781 (emphasis in original) (citations omitted); *see also United States v. Carson*, 702 F.2d 351, 361 (2d Cir.1983) (a court must determine "wheth-

---

6. In Petitioner's direct appeal to the Appellate Division, he also argued that the verdict was against the weight of the evidence. (*See* Resp. Aff., Ex. D, at 10.) Petitioner did not raise the weight of the evidence claim in his habeas petition, presumably because such a claim, which presents a question of state law, is not cognizable on federal habeas review.

*See, e.g., Kearse v. Artuz*, No. 99 Civ. 2428, 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) (summarily dismissing challenge to verdict against the weight of the evidence on the ground that "[d]isagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").

er the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor") (citations omitted). In making this determination, "pieces of evidence must be viewed in conjunction, not in isolation." *United States v. Podlog,* 35 F.3d 699, 705 (2d Cir.1994) (citation omitted).

### B. *Evidence to Support Petitioner's Conviction*

■ In this case, there was sufficient evidence to convict Petitioner of the criminal sale of a controlled substance in the third degree under New York Penal Law § 220.39(1). This statute states that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells ... a narcotic drug." N.Y. Penal Law § 220.39(1). Here, Petitioner argues that the government has not proved beyond a reasonable doubt that Petitioner violated Section 220.39(1) because Ferguson admitted that, although he saw Huhn hand money to Petitioner, he could not see what Petitioner handed to Huhn. (*See* Petitioner's Traverse Brief, dated November 13, 2001 ("Traverse Br."), at 1.)

As Respondent correctly points out, however, there was sufficient evidence for the jury to find that Petitioner did sell cocaine to Huhn. (*See* Respondent's Memorandum of Law in Opposition to Petitioner's Application for a Writ of Habeas Corpus, dated October 29, 2001, ("Resp.Mem.") at 10–13.) Ferguson testified that, between approximately 3:00 a.m. and 4:25 a.m., while using binoculars to observe a well-lit street, he observed Petitioner meet with four individuals and engage in what appeared to be narcotics

transactions with them. (Tr. III at 397–99, 401–02, 460–61.) During the fourth transaction, Ferguson observed Petitioner take two objects from a white bag and give them to Huhn in exchange for money. (*Id.* at 402–04, 464.) Ferguson radioed to Hernandez, his partner, and Hernandez proceeded to arrest Huhn. (*Id.* at 404, 490–92, 508.) As Hernandez approached Huhn, Huhn threw something on the ground, which Hernandez immediately picked up. (*Id.* at 490–92.) This item was later determined to be cocaine. (*Id.* at 527.) When Hernandez arrested Huhn, Hernandez noted that Huhn's fingers were covered with a white substance, which Hernandez believed to be cocaine. (*Id.* at 492–93, 508.) When Petitioner was arrested, Gargan removed a sum of money from Petitioner's pocket. (*Id.* at 413.) Although Ferguson did not see what Petitioner handed to Huhn, the fact that Huhn was arrested with cocaine in his hand shortly after Ferguson observed the transaction between Petitioner and Huhn supports the jury's conclusion that Petitioner sold cocaine to Huhn.

Petitioner argues further that because the police did not recover any narcotics from Petitioner, and because both marijuana (which is not a narcotic) and cocaine (which is a narcotic) were recovered from Huhn, the state did not meet its burden of proving that Petitioner sold narcotics to Huhn. (Traverse Br. at 2, 5.) The marijuana, however, was found in Huhn's wallet, while Huhn had apparently been holding the cocaine when approached by Hernandez. From this, the jury could reasonably conclude that Huhn had just purchased cocaine, not marijuana, from Petitioner.

■ Citing *People v. Carmona,* 233 A.D.2d 142, 649 N.Y.S.2d 432 (1st Dep't 1996), Petitioner also argues that the absence of photographs or physical evidence showing that Petitioner sold narcotics

leads to the conclusion that the evidence is insufficient to sustain his conviction. (*See* Traverse Br. at 3.) *Carmona,* however, involved a direct appeal to the State Appellate Division, in which that court reversed the defendant's conviction on the ground that the trial court improperly denied the defendant's motion to suppress certain drugs and money recovered by the police. The Appellate Division held that the officer's testimony during the suppression hearing regarding why that officer believed that he had proper grounds to search the defendant "strain[ed] the officer's credibility beyond the breaking point." 233 A.D.2d at 144, 649 N.Y.S.2d at 434. Thus, in *Carmona,* it was the Appellate Division's role to assess the officer's credibility in determining whether a proper search was conducted. Here, however, no issue has been raised with respect to the conduct of the Petitioner's suppression hearing, and any credibility issues in question have been resolved by the jury. "The role of this Court is clear: '[f]ederal habeas courts are not free to reassess the facts specific to credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y.1996) (quoting *Anderson v. Senkowski,* No. CV–92–1007 (CPS), 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992), *aff'd,* 992 F.2d 320 (2d Cir.1993)); *see also United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (The jury retains "exclusive[ ] responsib[ility] for determining a witness' credibility.") (citation omitted). The jury in this case evidently found the testimony of the prosecution witnesses credible, and this Court cannot disturb that opinion. Further, to the extent Petitioner is arguing that only physical evidence can be adequate to support a guilty verdict, Petitioner is incorrect. *See People*

*v. Samuels,* 282 A.D.2d 102, 108, 726 N.Y.S.2d 71, 76–77 (1st Dep't 2001) (holding that a violation of N.Y. Penal Law § 220.39(1) may be proven by circumstantial evidence, and that "[w]here the proof offered is circumstantial, there is no basis in policy, logic or law for limiting that proof to any particular genre of evidence").

Finally, Petitioner argues that the prosecution did not establish a buyer-seller relationship between himself and Huhn, and also did not establish that Petitioner was acting in concert during the sale. (Traverse Br. at 4.) These arguments also fail. As demonstrated above, there was sufficient evidence for the jury to conclude that Petitioner did sell narcotics to Huhn. Moreover, Petitioner was not convicted of acting in concert with anyone—he was convicted of selling narcotics himself.

Viewing all of the evidence in the light most favorable to the prosecution, the Appellate Division did not unreasonably apply or act contrary to clearly established federal law in concluding that "the totality of the evidence provided ample basis for the inference that the cocaine found in the buyer's possession was sold to him by defendant in the transaction witnessed by the officer." *See Pitter,* 269 A.D.2d at 287, 704 N.Y.S.2d at 456. A rational jury could have believed the prosecution's witnesses in this case and found the essential elements of the crime beyond a reasonable doubt. Therefore, I recommend dismissal of this claim.

### CONCLUSION

For all of the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial

**352**

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States Courthouse, 40 Centre Street, Room 201, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

SO ORDERED.

July 8, 2002.